John GIPSON, Bill Hefley, M.D., Coolidge Faulkner
Richard Conder, James Dixon, A.J. Tomme, and Jack Case
*v.* Lee A. MUNSON, Chancellor, Joe Brown, Bob Scott,
and Tip Nelms, D.D.S.

88-128                                    752 S.W.2d 752

Supreme Court of Arkansas
Opinion delivered July 5, 1988
[Supplemental Opinion on Denial of Rehearing
September 19, 1988.*]

*Friday, Eldredge & Clark,* by: *William H. Sutton,* for petitioners.

*Steve Clark,* Atty. Gen., by: *Theodore Holder,* Asst. Atty. Gen., for respondent Lee A. Munson, Chancellor.

*Joe Brown,* pro se; *Tip Nelms, D.D.S.,* pro se; and *Cliff Jackson,* for respondents Joe Brown, Tip Nelms, D.D.S., and Bob Scott.

PER CURIAM. Our most recent opinion involving the present parties is *Gipson* v. *Brown,* 295 Ark. 371, 749 S.W.2d 297 (1988). Neither party filed a petition for rehearing. The mandate was issued on May 27, 1988.

The respondents have instituted contempt proceedings in chancery court and argue that because we dismissed the petitioners' appeal in *Gipson,* the lower court's judgment remained in effect. The petitioners filed the pending petition for writ of prohibition and rely upon discussion in *Gipson* which made clear that the underlying dispute between the parties was a church matter not proper for resolution by the courts. We granted a temporary stay pending further review.

The temporary stay is now made permanent. We direct

---

*Hays and Glaze, JJ., concur; Purtle, J., dissents.

the attention of the lower court and the parties to the specific language of our mandate:

> It is therefore considered by the Court that the decree of said Chancery Court in this cause rendered be and the same is hereby dismissed in accordance with the opinion herein delivered.

Accordingly, petitioners' writ of prohibition is granted.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. The Arkansas civil justice system has suffered damage from which it may never recover as a result of the majority opinion in this case which they have labeled a "per curiam." I respectfully request the bench and bar as well as all church members to study the opinion and this dissent. From this date forward there is no longer a separation of church and state. The per curiam is definitely a victory for the majority of the members of the Sixth and Izard Church of Christ. This court, in an effort to mollycoddle the dominant faction in this church dispute, has, in effect, reversed its original decision in this case and held that the Sixth and Izard Church of Christ need not bother to abide by the laws of the state of Arkansas even though the dispute had nothing whatsoever to do with church doctrine. Eventually even this church will wish this decision had never been rendered. I will explain later in this dissent.

The genesis of this lawsuit is without a doubt an internal church dispute—and is fueled by distrust and hate rather than love of God and man. This dissent is going to be primarily about the facts. However, for an understanding of the law see my dissent in *Gipson v. Brown*, 295 Ark. 371, 749 S.W.2d 297 (1988) (hereinafter *Gipson II*), in which Justices Dudley and Newbern joined. In *Gipson II* the majority rambled on about what we might do if we were to act on the merits of the case but in the end the decision simply *dismissed the appeal*?! The majority refused to reach the merits when we had the case before us—fully briefed. Today they have decided the merits of the case, in one page, when the matter before us is a motion for contempt for wilful failure to abide by the order of the trial court.

The First Amendment to the United States Constitution clearly establishes the right to exercise one's religious beliefs and

prohibits the establishment of any laws restricting the free exercise thereof. All of us agree that this amendment is clear and unequivocal. Article 2, Section 25, of the Arkansas Constitution requires the General Assembly to enact laws suitable "to protect every religious denomination in the peaceful enjoyment of its own mode of public worship."

The state of Arkansas has violated neither of the foregoing constitutional provisions. It has however, pursuant to other constitutional powers, enacted the "Arkansas Nonprofit Corporation Act," which specifically permits religious groups to incorporate pursuant to the act. See Ark. Code Ann. §§ 4-28-201 through 4-28-206 and 4-28-209 through 4-28-223 (1987).

The Sixth and Izard Church of Christ for whatever reason elected to incorporate under this law. It is important to note the provisions of Ark. Code Ann. § 4-28-218 which reads as follows:

> Books and accounting records.
>
> (a) Each corporation shall keep correct and complete books and records of account.
>
> (b) All receipts of moneys and expenditures shall be properly recorded according to accepted accounting principles.
>
> (c) A record of the proceedings of its members, board of directors, and committees shall be kept.
>
> (d) A record of the names and addresses of its members entitled to vote shall be maintained at the principal office or place of business of the corporation.
>
> (e) All books and records of a corporation may be inspected by any member for any proper purpose at any reasonable time.

The foregoing law is not difficult to understand. Neither do I find anything unreasonable or unfair about it. Moreover, I cannot in my wildest dreams imagine how this law interferes with the constitutional right to the free exercise of any church's or individual's religious beliefs; this law does not in any manner concern itself with church doctrine or polity.

A religious organization may quarrel and argue all it wants to, but it ought not to be allowed to manipulate the courts of this

state to settle its internal squabbles. The church in this case is using this court to settle its internal bickering. The church should render to Caesar that which is his and to God that which is His.

The original plaintiffs in this case made a request to see the financial records of the corporation as provided by the express terms of the law under which the church had chosen to incorporate. The minister and the elders, who were also named as the board of directors of the corporation, refused to allow the other members to see the records of expenditures. This squabble reached this court for the first time in *Gipson* v. *Brown*, 288 Ark. 422, 706 S.W.2d 369 (1986) (hereinafter *Gipson I*). In reversing and remanding in *Gipson I*, we stated:

> We have strictly adhered to this absolute prohibition of any infringement upon religious beliefs. It necessarily follows that internal church disputes relating to the disclosure of church business should not be subject to the legal concern of this court. However, when the Sixth and Izard Church of Christ decided to incorporate, it submitted itself to certain corporate laws of this state, thus opening the door to examination of their present quarrel in a legal setting.

In reversing and remanding in *Gipson I*, we directed the Gipson faction to comply with the order of the chancellor. We opined that the chancellor could decide that the Brown faction was not entitled to see the financial records of the corporation. However, the chancellor subsequently found that they were entitled to see at least some of the records. The Gipson faction refused and instead appealed. The elders again refused to comply with the chancellor's ruling, arguing that their religious beliefs were superior to manmade law and therefore the law must fall when there is a conflict. When the chancellor issued an order to show cause why they should not be held in contempt, they came running back to this court to bail them out again—and the court has done exactly that.

The plaintiffs sought, among other things, to find out what had happened to sums contributed to the Polish Relief Fund in excess of $600,000. The only information furnished was that one of the elders, acting as trustee, transferred the $600,000 to a bank in Mannheim, West Germany. There was a one-page report listing ten expenses, one of which was a large purchase for Amway soap. The plaintiffs allege that the trustee and his wife

were Amway dealers. They also allege that the elders fraudulently conspired to conceal from the members of the corporation the illegal expenditure of the funds which were collected for the Polish Relief Fund.

Now I turn to the matter of what the court has done in the present case, *Gipson II*. Our opinion in *Gipson II* was delivered on May 9, 1988. No petition for rehearing was filed within 17 days as is required by Supreme Court Rule 20. Therefore, that decision became the law. *The opinion dismissing the appeal could only mean one thing—the case was back in the trial court as if no appeal had ever been filed.*

On June 2, 1988, the Gipson faction filed an "Application for Temporary Relief" in this court. The purpose of the petition was to prevent the trial court from holding a hearing to determine whether the elders were in contempt for their wilful refusal to disclose certain financial records of the corporation. We have never before usurped the discretionary powers of a trial court. It's possible that the elders would not have been held in contempt. Even if they had been, the remedy is by appeal.

The real tragedy of this case is the permanent damage done to precedent, the law and to the integrity of this court. We have before us a case where the parties sat by and looked suspiciously at each other while the period for filing a petition for rehearing expired. Once again this court has reached outside its jurisdiction and rescued the elders of the Sixth and Izard Church of Christ from complying with the provisions of our laws and rules which are strictly applied to all other litigants. How long do the elders have to come back in and argue that this court was wrong (which we were, but not for the reasons they argue)? In effect, they have demanded that we overrule our prior decisions without even filing a pleading, let alone offering proof to support their position.

Will this new rule apply only to the Sixth and Izard Church of Christ? Or can other litigants wait until the spirit moves them and file for "temporary relief," and then expect this court to make it permanent without further argument or briefing?

The church—any church—has the absolute unfettered right to worship according to the dictates of their own consciences, so long as they do not trespass upon the rights of others. Having

elected to incorporate under the laws of the state, they should be required to conform to the consequences of their voluntary act. Otherwise, it is only fair that all other businesses organized as "not for profit" corporations be allowed to choose which portions of the law by which they will abide.

Incorporating obviously was not done for reasons of religious belief. After deciding not to follow the law, the elders decided it was a religious belief not to obey the law if they did not like the law. I am deeply saddened that this court has been stampeded into ignoring the law on the totally false premise that it violates freedom of religion.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
## SEPTEMBER 19, 1988

759 S.W.2d 791

PER CURIAM. Petition for rehearing is denied.

GLAZE and HAYS, JJ., concur.

PURTLE, J., dissents.

TOM GLAZE, Justice, concurring. Respondents take exception with the term "appeal dismissed" which this court used in its original decision in this cause, *Gipson v. Brown*, 295 Ark. 371, 749 S.W.2d 297 (1988), and in its subsequent per curiam issued July 5, 1988, which reflected the court's mandate dismissed the chancery court's decree. Respondents claim the term "appeal dismissed" in the original opinion should control over the mandate language, and therefore would, they surmise, effectively affirm the chancellor's decree below. Such a claim is unfounded. It is quite obvious that this court's majority decision was in direct conflict with the chancellor's decision and this court, based on the rationale and conclusion reached in its opinion, never intended to affirm the trial court's holding. Because the use of the language "appeal dismissed" in the opinion was apparently confusing to the respondents, the court made an attempt by its July 5, 1988 per curiam to clarify any confusion. Ark. Code Ann. § 16-67-325(a) (1987) (the supreme court may dismiss the cause and enter such

judgment upon the record as it may in its discretion deem just). Unquestionably, this court has the authority to recall a mandate regularly issued in situations where a misapprehension exists. *See* 5(B) C.J.S. *Appeal and Error* § 1996 (1958); *see also Lindus* v. *N. Ins. Co. of New York*, 103 Ariz. 160, 438 P.2d 315 (1968); *Ginn* v. *Penobscot Co.*, 342 A.2d 270 (Me. 1970). Although I believe the majority opinion and the court's mandate can only be read as countervailing and dismissing the trial court's decree, I would recall the mandate and modify it to read, "Reversed and remanded with directions to the chancery court to dismiss this cause." Surely, such modification would alleviate any misapprehensions or doubts as to what disposition the majority intended when delivering and issuing its opinion and mandate.

HAYS, J., joins in this concurrence.

JOHN I. PURTLE, Justice, dissenting. I dissent not only because the majority is so blatantly wrong, but because I want the record to clearly reveal that I did not in any way contribute to the manner in which this case has been handled by this court.

The decision to grant the petition for a writ of prohibition was made more than 17 days after the opinion in this appeal had been rendered and the mandate issued. When one faction was ordered to show cause why it should not be held in contempt, the petition was filed in this court seeking temporary relief. We gave them what they asked for, and gratuitously dismissed the whole law suit without any consideration of the merits and in spite of the lack of any precedent from any jurisdiction to support such action.

In a purely collateral proceeding, after the decision of the court had become final, the majority simply decided to put an end to the case by dismissing it. The precedent established by this action leaves open the right of any party to collaterally attack decisions of this court at any period in time. Unless this is a one-time-only case, our decisions can no longer be considered final. I wholeheartedly agree with the statements contained in the petition for rehearing, which is on file with the clerk of this court.

I would grant the rehearing and reinstate the case to be heard on its merits.