THE FIRST NATIONAL BANK IN LITTLE ROCK *v.* RUSSELL C. ROBERTS, JUDGE

5-4286                                              416 S. W. 2d 316

Opinion delivered June 5, 1967

[Rehearing denied July 26, 1967.]

*Smith, Williams, Friday & Bowen,* for appellant.

*Gene Worsham* and *Fletcher Jackson* and *Jeff Mobley* and *Joe Purcell,* Attorney General; *Don Langston* & *William R. Hass,* Assts. Attys. General, for appellee.

CONLEY BYRD, Justice. Petitioner, The First National Bank, filed herein a Petition for Writ of Prohibition to test the validity of a subpoena issued by the Faulkner County prosecuting attorney summoning the bank to appear before him and bring with it records pertaining to the bank account of Wanda L. Tudor; and to challenge the validity of the order of respondent, Russell C. Roberts, judge of the Faulkner County Circuit Court, directing petitioner to furnish to the prosecuting attorney, pursuant to the subpoena, copies of (1) the account card referred to as a signature card, (2) all deposit slips, and (3) all ledger sheets in connection with the bank account of Wanda L. Tudor.

In view of the importance of the issues, we are treating the petition as one for certiorari, as suggested by petitioner. This same procedure was followed in *Wasson, Bank Comm'r* v. *Dodge, Chancellor,* 192 Ark. 728, 94 S.W. 2d 720 (1936).

The record shows that, as directed by Senate Resolution No. 29 of the 1967 legislature, the prosecuting attorney began an investigation into alleged vote buying in Faulkner County during the 1966 general election. During his investigation, he acquired photostats of some checks drawn on the bank account of Wanda L. Tudor in the First National Bank in Little Rock which con-

tained the notation "door knocker." This litigation arose when the prosecuting attorney petitioned the circuit court to direct the bank to produce the information and documents sought by the subpoena the prosecuting attorney had issued under the authority of Ark. Stat. Ann. § 43-801 (Repl. 1964).

For relief from the order directing petitioner to produce the (1) account card, (2) deposit slips and (3) ledger sheets, petitioner relies upon four points which we will discuss in the order set out by petitioner.

## POINT I

THE CIRCUIT COURT IS WITHOUT JURISDICTION TO AUTHORIZE AND EMPOWER THE PROSECUTING ATTORNEY TO SIT AS A GRAND JURY, IN THE ABSENCE OF THE PROSECUTING ATTORNEY'S COMPLIANCE WITH THE PROVISIONS OF ARK. STAT. ANN. § 43-801 (REPL. 1964)[1]

Ark. Stat. Ann. § 43-801 provides as follows:

"The prosecuting attorneys and their deputies shall have authority to issue subpoenas in all criminal matters they are investigating; and shall have authority to administer oaths for the purpose of taking the testimony of witnesses subpoenaed before them; such oath when administered by the prosecuting attorney or his deputy shall have the same effect as if administered by the foreman of the grand jury. The subpoena herein provided for would be issued by the prosecuting attorney or his deputy and shall be substantially in the following form:

"The State of Arkansas to the Sheriff of.......................
County: You are commanded to summon.......................
to attend before the Prosecuting Attorney at ...............

---

[1] Petitioner does not challenge the proceedings used by the prosecuting attorney to enforce compliance with his subpoena.

on the ..............................., A.D. 19....., at ........M., and testify in the matter of an investigation then to be conducted by the said Prosecuting Attorney growing out of a representation that ...................... has committed the crime of.................................in said County. Witness my hand this ............ day of ...................... A. D. 19.......

$$\text{Prosecuting Attorney}$$

By ......................................................................................
Deputy Prosecuting Attorney''

The su])poena issued by the prosecuting attorney is as follows:

## "PROSECUTING ATTORNEY'S

## WITNESS SUBPOENA

"THE STATE OF ARKANSAS TO THE SHERIFF OF PULASKI COUNTY:

"You are commanded to summons the First National Bank in Little Rock, Arkansas, or its duly authorized representative to attend before the Prosecuting Attorney in the Faulkner County Courthouse, Conway, Arkansas, on or before the 16th day of March, 1967, and/or to furnish to him the following information and documents: The name and address of all individuals authorized to sign checks on the bank account on which Wanda L. Tudor and others jointly with her had or have in your bank; the date said account was opened; the dates and amounts of all deposits made in said account; the source of said deposits whether by cash or by check, and if by check, upon whose account and on what bank drawn, the total number of checks written on said account for a period of 120 days next preceding November 17, 1966, by each person authorized to sign checks on said account; photostat copies of all

checks, front and back, reflecting that they were cashed, deposited or presented for payment at or through any and all banks in Faulkner County, Arkansas, and then and there present said documents, information and testimony in the manner of said investigation then and there to be conducted by the said Prosecuting Attorney growing out of a representation of alleged election law violations having been committed in Faulkner County, Arkansas.

"WITNESS my hand this 22nd day of February, 1967.

/s/ Jeff Mobley

PROSECUTING ATTORNEY"

Petitioner's argument under this point is that the "Prosecuting Attorney's Witness Subpoena" does not specify the crime committed nor the name of the person charged with the crime and that it, therefore, is not in substantial compliance with Ark. Stat. Ann. § 43-801; that the General Assembly must have had a specific purpose for setting forth in the statute the form of subpoena used by a prosecuting attorney; and that this purpose must have been to avoid harassment of innocent parties and the invasion of personal rights.

This is an investigation of an alleged election fraud. While we have a number of election laws making it a crime to bribe voters or otherwise expend money in a campaign, the prosecuting attorney does not know whether a specific election law has been violated or who violated which law. Thus, it is easily seen that, after investigation, the prosecuting attorney may determine that no election laws have been violated. In such instance, he would have committed a grave injustice had he alleged in his subpoena that any certain individual had committed a specific crime.

Furthermore, while we recognize that all delegation of authority to a public official to act on any matter is

subject to being perverted to an unlawful use by the unscrupulous, we believe that petitioner's fears of harassment of innocent parties and the invasion of personal rights are overemphasized. It must be remembered that the prosecuting attorney is powerless to force testimony from a witness without applying to the judiciary, where certainly the witness would have an opportunity to prevent harassment and invasion of his personal rights.

Therefore, with respect to the issues raised by petitioner, we hold his contention on this point to be without merit.

## POINT II

THE PROSECUTING ATTORNEY'S SUBPOENA COMMANDS PETITIONER TO PRODUCE RECORDS NOT IN ITS POSSESSION.

While this would be a good defense in a contempt action against petitioner, it is not here in a position to claim that it does not have the records which it was directed to produce. Petitioner's president[2] specifically stated that on advice of counsel he had not examined the bank account in question to determine what records the bank had.

We do not understand the court order to direct petitioner to furnish records that it did not have on the date the subpoena was issued.

---

[2]In taking this position, Mr. Vinson, petitioner's president, stated: "I wanted it to be clear our bank has no intention of obstructing anything, the prosecuting attorney or this Court in what they are attempting to do. Our bank is only interested in trying to protect the sanctity of what we consider to be a trust, and I believe the majority of people—most of us have bank accounts, and we would always appreciate a bank taking that position, and I want to state again we have no interest in any of this affair at all. If there are two sides, we don't have any interest in either side, only the bank records, and, again, it is a historic thing, not something that happened yesterday."

## POINT III

THE PROSECUTING ATTORNEY'S SUBPOE-NA IS UNREASONABLE AND UNCONSCIONABLE IN THAT IT WOULD REQUIRE THE PETITION-ER TO SPEND LARGE SUMS OF MONEY EXAM-INING VOLUMINOUS RECORDS AND REPRO-DUCING RECORDS AND WOULD DISRUPT THE PETITIONER'S DAY-TO-DAY OPERATIONS AND DUTY ASSIGNMENTS OF PETITIONER'S EM-PLOYEES, THE CUMULATIVE EFFECT OF WHICH WOULD CONSTITUTE A VIOLATION OF THE PETITIONER'S RIGHTS UNDER AMEND-MENTS 4 AND 14 TO THE CONSTITUTION OF THE UNITED STATES AND ARTICLE 2, SEC-TIONS 3 AND 15 TO THE CONSTITUTION OF THE STATE OF ARKANSAS.

We find this contention to be without merit because on cross-examination it was established that petitioner regularly furnishes these same records to the FBI and the IRS agents when they have the written request or authorization of the owner of the bank account. Further-more, the prosecuting attorney recognized that there would be a cost involved in the production of some of the documents and offered to get a commitment from the county for the payment of such expenses prior to the production of said documents. The bank, for purposes of determining the right of the prosecuting attorney to reach such records, requested him not to take any action on cost commitments until the issues in this litigation were determined.

Wanda L. Tudor's testimony established that the bank account was in her name and that only she was authorized to draw checks on the account. In this situa-tion, petitioner stated that as far as it was concerned, Mrs. Tudor was the owner of the bank account.

After establishing that the bank does furnish such records to the FBI and the IRS under the circumstances

mentioned, the prosecuting attorney asked petitioner's president the following question and obtained the answer set out below:

"Q. Mr. Vinson, I will ask you whether or not you would turn over to the Prosecuting Attorney's office of this district, the Fifth Judicial District, the records that have been requested concerning the account in your bank in the name of Wanda L. Tudor, which has been testified to and under discussion in this litigation? Would you turn these records over to the Prosecuting Attorney's office if Miss Wanda L. Tudor furnished you her written permission to do so?

"A. I believe I have previously testified, Mr. Mobley, that we do allow examination of bank records upon written request or authorization of the owner of the account, provided our bank gets a proper request, and by that I mean a request signed by Mrs. Tudor, the owner of the account, that the Prosecuting Attorney be allowed to examine, or reproduce, the records in our bank, we would comply with Mrs. Tudor's request, and we would make available to you all the records pertaining to this account. I would not want to tell you we would reproduce them all. That would be a matter of cost. We would make all records available to the Prosecuting Attorney Attorney upon her written order. Yes sir."

Having established through Mr. Vinson that a statement in open court by Mrs. Tudor authorizing the bank to release the records would satisfy its policy of requiring a written request or authorization of the owner of the account, and having established that Mrs. Tudor did give her consent in open court for the delivery of these records, the court entered the oral order here involved, which is as follows:

"Mr. Bank President, you produce on or before 5:00 o'clock p.m., Tuesday afternoon, March 28, 1967, the following:

"(1) Bank ledger sheet covering the account of Wanda Tudor from its inception to the present date —I mean from the day the account was opened to the present time. You will produce a copy of the authorization as to who has authority to sign checks against that account. If there is more than one person who has authority to write checks on that particular account, you will so produce a copy of it. I am saying copy from the standpoint I know that you don't want to get rid of your originals. Mr. Mobley, I take it that a copy—a photostat will suffice?"

\* \* \*

"In addition, it is the requirement of this Court that you produce copies of deposit slips made by Wanda L. Tudor, or deposit slips made by anyone else. These deposit slips, of course, would show whether the deposit was made by check, money, or so forth.

"Now, this does not mean that you will not be ordered in the future to comply with further orders of this Court, and at this time I withhold my orders as to you as to any future things which may be required."

Following this order, counsel for petitioner asked Mrs. Tudor if she had any objection to the bank furnishing the items in the order, whereupon counsel for Mrs. Tudor stated, "We have no objection."

Under the circumstances, we think there was no abuse of discretion by the trial court in ordering the production of the documents. However, we would point out that petitioner would be entitled to the cost of

the production of the records before it could be held in contempt of court for failure to do so.

## POINT IV

THE PROSECUTING ATTORNEY HAS NOT SHOWN THAT THE INFORMATION SOUGHT IN THE SUBPOENA FROM THE PETITIONER IS NOT OTHERWISE AVAILABLE TO THE PROSECUTING ATTORNEY.

The record does not sustain this contention. What the record shows is that Mrs. Tudor had these documents in her possession at the Republican Party headquarters in the Tower Building before she went to work in Governor Rockefeller's office at the capitol following his inauguration; that when she went back to get the records she was unable to find them or to determine who had the records. Her testimony is that she was informed by the folks working at the party headquarters that since she did not have the records she consequently could not be held in contempt for failure to produce them.

Therefore, it appears to us that the record does not show that the information sought is otherwise available to the prosecuting attorney.

For the reasons stated herein, the petition is denied.