Charlene Diane HUTTON, Mother, David Edward Hutton,
Father *v.* Michael SAVAGE, as Representative of the
Arkansas Department of Human Services, Division of
Children and Family Services

88-274                                       769 S.W.2d 394

Supreme Court of Arkansas
Opinion delivered March 20, 1989

*Jim Johnson*, for appellant.

*Diane C. Boyd*, Ass't Gen. Counsel, for appellee Arkansas Dep't of Human Services.

JACK HOLT, JR., Chief Justice. This appeal is from an order of the probate court finding that the two minor children of appellants Charlene and David Hutton ("Huttons") continue to be dependent-neglected, that it is in the best interest of the children to have custody continue in the appellee Arkansas Department of Human Services ("Human Services") for foster care placement, and that Human Services should petition for guardianship with authority to consent to adoption. The Huttons argue: (1) the juvenile master's findings and conclusions, as adopted by the probate judge, are against a preponderance of the evidence; (2) the order of the probate court is void because the juvenile master acted in excess of the powers granted him by our code; and (3) the exercise of jurisdiction over dependent-neglected juveniles is not a permissible function of the probate courts under the Arkansas Constitution.

We agree with the Huttons' second point that the participation of the juvenile master appointed to preside over this case exceeded that authorized by law. This raises the far more

fundamental issue of the power of the probate court to vest in the master the right to preside over all juvenile cases in probate court. We conclude that the legislation which permits the use of masters and referees in juvenile cases, Act 14 of 1987, § 6, Ark. Code Ann. § 9-27-310 (Supp. 1987), contravenes the delegation of judicial powers and duties as set forth in our constitution and constitutes an unauthorized grant of legislative authority. We reverse and remand for proceedings consistent with this opinion and address only such other issues as may arise on remand.

In December 1984 a petition was filed in the Benton County Juvenile Court on behalf of Arkansas Social Services requesting court ordered supervision of the home environment of the Huttons' children, Christina and Lisa. The petition alleged that, in order to protect the health and well being of the children, the Huttons should be required to attend parenting classes and should make their home safe and clean.

Subsequently, on January 22, 1985, Christina and Lisa were adjudicated dependent-neglected. It was determined that reasonable efforts had been made by social service agencies as of 1982 to provide supportive care and preventive services in order to keep the children in the home of their parents but that it was necessary to place the children in protective foster care in order to secure their health and welfare.

From February 1985 until May 1988, at least thirteen orders were entered reflecting hearings on the issue of the Huttons' care of Christina and Lisa. Prior to January 1987 it was determined at each hearing that custody of the children should remain with the Department of Human Services and that Human Services should continue to provide rehabilitative services and attempt to return custody to the Huttons.

On January 20, 1987, this court held that the exercise of exclusive jurisdiction over juveniles was not a permissible function of the county courts under the Arkansas Constitution. *Walker* v. *Arkansas Dep't. of Human Services*, 291 Ark. 43, 722 S.W.2d 558 (1987). The legislature immediately responded by transferring jurisdiction of all matters pertaining to juveniles in need of supervision and dependent-neglected juveniles to the probate courts. Act 14 of 1987. As a result, the case at bar was transferred to the Benton County Probate Court.

On February 27, 1987, the Benton County Probate Court entered an order appointing a master to hear all juvenile cases in the probate court as provided in § 6 of Act 14. Between January and November 1987, at least four hearings were conducted by the master concerning the care of Christina and Lisa. During that period custody was returned to the Huttons in light of improvements in the home situation.

On April 15, 1988, a motion was filed by Human Services which requested that custody of the children be returned to them because the Huttons had failed to comply with the terms and conditions of the court's orders and a change of custody was necessary to protect the health and welfare of the children due to a rapidly deteriorating home situation. Custody was temporarily returned to Human Services on April 19, 1988.

On May 24, 1988, the juvenile master of the probate court conducted a hearing. An order was entered on July 29, 1988, signed by the master and by the probate judge finding that custody should continue with Human Services for foster care placement and that Human Services should proceed with a petition for guardianship with authority to consent to adoption. From that order comes this appeal.

### Use of the Juvenile Master

The Huttons argue that the order appealed from is void and of no effect as it was in form and substance a final order by the juvenile master, which is contrary to the directive in § 6 of Act 14 of 1987 [Ark. Code Ann. § 9-27-310 (Supp. 1987)] that all masters and referees appointed to hear juvenile cases shall only submit recommendations to the probate judge and shall in no event have the authority to issue a final order with respect to any matter referred to them. We agree that the master exceeded the powers which probate courts may vest in juvenile masters. Likewise, we note that his participation went beyond that contemplated by ARCP Rule 53 and our decisions in *State* v. *Nelson*, 246 Ark. 210, 438 S.W.2d 33 (1969), and *Gipson* v. *Brown*, 295 Ark. 371, 749 S.W.2d 297 (1988).

It is also clear to us that § 6 of Act 14 of 1987, which grants judges the right to appoint juvenile masters with such powers as the judges direct and which purports to vest in the

masters the full authority of the judges of their respective divisions, constitutes an unauthorized grant of legislative authority and the impermissible creation of what amounts to substitute judges.

Because the grants of power found in § 6 of Act 14 go to the very essence of the exercise of jurisdiction over juvenile matters, we address the permissible use of masters and the provisions of Act 14 even though the parties did not present these issues at the trial level. It is well settled that on appeal this court may raise the issue of lack of jurisdiction notwithstanding that the parties did not question jurisdiction below. *Miles* v. *Southern*, 297 Ark. 274, 760 S.W.2d 868 (1988).

Act 14 of 1987, § 6, provides in part as follows:

> The judge or judges of the juvenile division of the circuit court and the juvenile division of the probate court of each county may, by joint agreement, designate and appoint a referee or master . . . *who shall have such power as may be granted by the judges of said divisions to hear juvenile cases* within the jurisdiction of their respective courts, and *submit recommendations to the judges* . . . .
>
> *A referee (or master) so designated shall have all the authority and powers of the judges of their respective divisions, but all orders arising from cases referred to the referee (or master) shall be issued by the judges* of their respective divisions, *and in no event shall the referee (or master) have the authority to issue a final order* with respect to any matter referred to them. Provided, however, that the respective judges of the juvenile division of the . . . probate court may authorize the referee (or master) to enter temporary orders in emergencies or under special circumstance, as authorized by such judge, which shall become final only on the approval and signature of the judge of the court from which such order is issued. [Emphasis ours.]

It was pursuant to § 6 of Act 14 that the Benton County Probate Court issued its order of February 27, 1987, appointing the juvenile master who presided over the Huttons' case. The order provided in part as follows:

> The Master shall have power to hear juvenile cases and make recommendations to the judges of their respective courts, pursuant to Act 14 of 1987. He shall have authority to enter temporary order in emergencies . . . but such order shall become final only on the approval and signature of the judge of the court from which such order is issued.

The order tracks the language of § 6, except it fails to set out that all orders arising from cases referred to referees or masters shall be issued by the probate judge and in no event shall the referees or masters have the authority to issue a final order with respect to any matter referred to them.

Following the master's first hearing in this matter in March 1987, he filed "Findings of Fact and Conclusions of Law," which were followed by an order signed by the probate judge which read, "The Court finds that the above findings of fact and conclusions of law should be and are hereby adopted." However, as to all subsequent hearings the record is completely lacking in findings of fact or conclusions of law *by the master*, and nowhere in the record do we find that the master ever made "recommendations" to the probate judge.

In fact, the only documents of record which relate to the issues presented at subsequent hearings are final orders. Each order fully recites the findings and conclusions pertaining to the Huttons' care of the children, decrees the rights of the parties, and concludes with the following (or substantially similar) language which appears at the conclusion of the order now on review:

> THE COURT DOES, THEREFORE, CONSIDER, ORDER, ADJUDGE AND DECREE the above and foregoing.

> IT IS SO ORDERED.

> Blaine A. Jackson  
> JUVENILE REFEREE  
> BENTON COUNTY PROBATE COURT  
> JUVENILE DIVISION

> Oliver A. Adams  
> PROBATE JUDGE

In determining whether we have before us an order of the probate judge which was merely signed by the master but indicates an appropriate review by the probate judge, or whether the order was a final order entered by the master and merely co-signed by the probate judge, we look to the comments of "the master" at the conclusion of the hearing which resulted in the order of July 29 and quickly find the answer.

> [The Master]—The Court finds that some of the original conditions which necessitated removal from the home have not ever been removed since the filing of the Petition of December 13, 1984, and . . . [the] Court finds that Mr. and Mrs. Hutton are at this time unwilling and, even if willing, probably unable to make the changes necessary to properly care for, protect, train, educate and discipline their children, and continued removal of the children is necessary to provide the proper care for the children. *The Court will, therefore, order that the children will continue in foster care at the present time; that the Arkansas Department of Human Services shall petition the Probate Court for guardianship with the right to consent to adoption as quickly as possible.*
>
> . . . If [appellants] can . . . straighten things up and make the improvements, *then this Court will entertain a Motion to Vacate that Order for Petition for Guardianship.* [Emphasis ours.]

Obviously, we are dealing with a final order entered by the master reflecting his findings and judgments rather than those of the probate judge.

This situation brings us to the more significant issue—the propriety of the legislature's vesting circuit and probate judges with the power to appoint masters or referees to preside over juvenile cases who shall have all the authority and powers of the judges of their respective divisions. In *Jansen v. Blissenbach*, 214 Ark. 755, 217 S.W.2d 849 (1949), this court discussed the validity of Act 448, § 4, of 1941, which authorized chancellors to appoint a "referee in probate" in each county who would have the power to admit wills to probate and make:

proper orders in all cases where no contest or exceptions are filed, and make his report to the Court of his finding[s] of law and fact, for the further action of the Probate Court, in all cases where contests or exceptions are filed and heard by such Referee in Probate, and to do such other acts and perform all such other duties as may be ordered by the court appointing him.

The Act further provided that if no petition for review was filed within ninety days from entry of the referee's order, the order would become final as if performed by the chancellor.

In discussing the validity of section 4 of Act 448, this court noted that Ark. Const. art. 7, § 34, as amended by § 1 of Amendment 24, provided that the *judge of the probate court* shall try all issues of law and fact arising in causes or proceedings within the jurisdiction of the court. We went on to note that it was clear from the constitutional provision that exclusive original jurisdiction over matters relative to the probate of wills was vested in the "judge" of the probate court. 214 Ark. at 758. In concluding our discussion of the constitutionality of Act 448, we said,

To say the Legislature had such power would clothe that body with authority to create a second or deputy probate judge in the several counties and this it may not do under the Constitution. It follows that § 4 of Act 448 of 1941 is an unauthorized grant of legislative authority and, therefore, unconstitutional and void.

*See also Mills* v. *Latham,* 215 Ark. 128, 219 S.W.2d 609 (1949). The conclusions reached in *Jansen* apply with equal force to our consideration of § 6 of Act 14 of 1987.

We recognize that to facilitate the handling of juvenile matters, § 6 of Act 14 granted the circuit and probate courts the right to appoint masters or referees to aid judges in the performance of specific judicial duties as they arise. It was not the intent of the legislature to displace the judges of the respective courts, and with that limitation in mind, § 6 of Act 14 was drafted to provide that all orders arising from cases referred to the referees or masters should be issued by the circuit or probate judges and that the referees or masters should *only submit recommenda-*

*tions* and should in no event have the authority to issue final orders with respect to any matter referred to them.

However, the Act went further and gave the masters and referees authority and powers commensurate with the judges of their respective divisions, including "such power as may be granted by the judges of said divisions to hear juvenile cases." Whether intended or not, the net effect, as evidenced by the order of the probate court appointing the master in this case, and by the facts of record, was to create substitute judges contrary to the provision in Ark. Const. art. 7, § 34, that the *judge of the probate court* shall try all issues of law and fact arising in causes or proceedings within the jurisdiction of that court. Accordingly, § 6 of Act 14 of 1987 is unconstitutional and void. Since § 6 applies with equal force to the use of masters in juvenile cases pending in circuit court, a similar conflict arises with respect to those courts.

In *State* v. *Nelson*, 246 Ark. 210, 438 S.W.2d 33 (1969), this court discussed the permissible functions of special masters.

> [T]he chancellor appointed a Special Master, and instructed him to prescribe rules for the expeditious and orderly progress of the tasks with which he was charged, and to proceed with hearing [the] evidence and ruling upon all matters of fact and law incident thereto . . . In this respect, the trial court was proceeding illegally . . . [T]he chancellor should hear the cause upon the pleadings and such evidence as may enable him to determine the principles to be applied in adjusting the equities of the parties and then make a reference to a master for such special inquiries or statements of accounts as may aid the court in making a definite decree . . . [T]he United States Supreme Court [has] stated that the use of masters was to aid judges in the performance of specific judicial duties as they arise and not to displace the court. [The Court] held that the appointment of a master and a reference at the inception of the case to take evidence and to report the same to the court with his findings of fact and conclusions of law was an action beyond the court's powers.

■ We stated in *Nelson* that to support the reference by reason of anticipation of a lengthy trial, complexity of the issues and congestion of the court's calendar does not constitute

sufficient grounds for the virtual displacement of the court by a special master.

> While we can conceive of situations in which a reference of particular matters may be made to a master during the course of litigation, a reference as broad as the one involved here is clearly in excess of the court's jurisdiction and in that respect the court proceeded without authority of law.

*Id.* at 219—220. The same statements ring true in this case. *See also Gipson* v. *Brown*, 295 Ark. 371, 749 S.W.2d 297 (1988).

■ Excessive utilization of masters has been a serious concern of this court as recently noted by Justice Hickman in his concurring opinion in *Walker, supra.* "Referees and masters are simply substitutes for the judge, and there is no place in our judicial system for permanent substitutes for judges." 291 Ark. at 54. In that same vein, this court promulgated Rule 53(b) of the Arkansas Rules of Civil Procedure which specifies that the reference to a master shall be the exception and not the rule and, except in matters of accounting and difficult computation of damages, the reference shall be made only upon a showing that some exceptional condition requires it.

Having reviewed the record in this case, we are convinced that the participation of the juvenile master in the case before us far exceeded that permitted by our constitution, our case law, and ARCP Rule 53(b). Additionally, § 6 of Act 14 of 1987 impermissibly authorizes circuit and probate judges to appoint masters or referees to hear juvenile cases with such powers as may be granted by the circuit and probate judges and purports to vest those masters or referees with all the powers and authority of the judges. As such, § 6 of Act 14 of 1987 is unconstitutional.

■ Our opinion in *Fortin* v. *Parrish & Reeves*, 258 Ark. 276, 524 S.W.2d 236 (1975), contains *dicta* on the use of juvenile masters. We overrule *Fortin* to the extent that it is inconsistent with the position adopted in this opinion.

We recognize that in *Fortin* it was determined that the master would, in any event, be considered a *de facto* judicial officer whose acts would be valid even though his "title" might be derived from legislation found to be unconstitutional. Notwithstanding that the master might have the position of an officer *de*

*facto* whose acts are binding as though done by one in office *de jure*, we have already determined that the case before us must be reversed in any event since the acts of the master were otherwise invalid once his participation exceeded that permitted by law.

■ Finally, it is well settled that where a statute or code provision is unconstitutional in part, the valid portion of the act will be sustained if complete in itself and capable of execution in accordance with apparent legislative intent. *Jansen, supra. See also* Ark. Code Ann. § 1-2-117 (1987). Since the remaining portions of Act 14 of 1987 are complete and capable of execution, they are not affected by this opinion.

■ In light of the foregoing, we reverse and remand to the probate court for such proceedings before the probate judge as are warranted under the circumstances to best serve the health, well being, and best interest of Christina and Lisa Hutton. In that regard the probate judge may, of course, employ the services of the master to the extent permitted by Rule 53 and should, pursuant to subsection (e), accept the master's findings of fact unless clearly erroneous or, after a hearing, adopt, modify, or reject the master's report as provided in subsection (e)(2). As in *Walker, supra*, it would be desirable to make our ruling prospective, but we do not have the power to hold a constitutional mandate in abeyance. *City of Hot Springs* v. *Creviston*, 288 Ark. 293-A, 713 S.W.2d 230 (1986).

### Jurisdiction of the Probate Court

The Huttons' next point is that the exercise of jurisdiction over dependent-neglected juveniles is not a permissible function of the probate courts under the Arkansas Constitution. We disagree.

As noted previously, this court held in *Walker* v. *Arkansas Dep't. of Human Services*, 291 Ark. 43, 722 S.W.2d 558 (1987), that the exercise of exclusive jurisdiction over juveniles is not a permissible function of the county courts under the Arkansas Constitution. Our opinion specifically noted that Act 215 of 1911 had established a new court, known as the "Juvenile Court," to be administered by the county judges, in contravention of Ark. Const. art. 7, § 1, which prohibits the creation of courts other than those provided for in the constitution. Further, the jurisdiction of

county courts as set forth in Ark. Const. art. 7, § 28, did not encompass the jurisdiction of juvenile matters.

In *Walker*, we overruled former case law which conflicted with our new position, and we concluded with the statement that the matter of achieving a constitutional system for the administration of juvenile matters would be left to the legislature—the body equipped and designed to perform that function. 291 Ark. at 51.

In response to the decision in *Walker*, the legislature found that the impact of our decision upon the administration of the juvenile justice system of this state created a state of urgency necessitating the immediate designation of an appropriate court or courts within the judicial structure of the state to exercise jurisdiction over juvenile matters formerly vested in the juvenile court, until such time as more permanent provisions could be made. Act 14 of 1987. The Act provided that all jurisdiction, powers, functions, and duties of the juvenile court and of the county judge as judge of the juvenile court, as provided in the Arkansas Juvenile Code of 1975, and laws amendatory and supplemental thereto, would be vested in a juvenile division of the circuit courts of this state with respect to juvenile delinquents, and in a juvenile division of the probate courts with respect to juveniles in need of supervision and dependent-neglected juveniles.

■ The Arkansas Constitution, article 7, § 34, as amended by Amendment 24, provides that in each county the judge of the court having jurisdiction in matters of equity shall be the judge of the court of probate, and shall have such exclusive original jurisdiction in matters relative to the probate of wills, the estates of deceased persons, executors, administrators, guardians, and persons of unsound mind and their estates, as is now vested in courts of probate, *or may be hereafter prescribed by law*. The italicized words distinguish the jurisdiction of the probate courts from that of the county courts in the critical sense that the jurisdiction which may be vested in the probate courts can be altered by act of the legislature.

Accordingly, in *Carpenter* v. *Logan*, 281 Ark. 184, 662 S.W.2d 808 (1984), and *Hilburn* v. *First State Bank of Spring-dale*, 259 Ark. 569, 535 S.W.2d 810 (1976), this court empha-

sized that the jurisdiction of the probate court extended only to such matters as were expressly conferred by the constitution, *or by statute*, or as were necessarily incidental thereto. To that effect, Ark. Code Ann. § 28-1-104 (1987) now provides that the jurisdiction of the probate courts of this state extends, for example, to matters of adoption and to the persons and estates of minors. Ark. Code Ann. § 16-10-126 (1987) provides that the chancery and circuit courts of this state may authorize the Arkansas Department of Human Services to provide investigative assistance to the probate courts as to actions in probate concerning the guardianship of minors.

▪ While we might resolve this issue on the basis of the express power of the probate courts to exercise jurisdiction over matters concerning the guardianship of minors, or over the persons of minors, we need only observe that the legislature has the power to enlarge upon the jurisdiction of the probate courts of this state. As such, it was within the power of the legislature to transfer the jurisdiction of matters touching upon juveniles in need of supervision and dependent-neglected juveniles to the probate court of each county.

At this juncture, we find it appropriate to note that Ark. Const. amend. 67, which deals with the jurisdiction of matters relating to juveniles and bastardy and which became effective as of January 1, 1989, reads in part as follows:

> SECTION 1. The General Assembly shall define jurisdiction of matters relating to juveniles . . . and matters relating to bastardy and may confer such jurisdiction upon chancery, circuit or probate courts, or upon separate divisions of such courts, or may establish separate juvenile courts upon which such jurisdiction may be conferred, and shall transfer to such courts the jurisdiction over bastardy and juvenile matters now vested in county courts by Section 28 of Article 7 of this Constitution.

We conclude that jurisdiction of the case before us was proper in the probate court of Benton County. Having determined that this case must be reversed and remanded because the master's participation exceeded that permitted by law and because § 6 of Act 14 of 1987 is unconstitutional and void, we do no respond to the Huttons' other point challenging the sufficiency

of the evidence.

Reversed and remanded.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. I respectfully disagree with the majority that Section 6 of Act 14 of 1987 is unconstitutional.[1] The majority ignores a cardinal rule of appeal and error in addressing points not first presented to the trial court, but rather decides a constitutional question sua sponte. We have repeatedly declined to consider even constitutional issues which are not first presented to the trial court. *Chapin* v. *Stuckey*, 286 Ark. 359, 692 S.W.2d 609 (1985); *Pope County* v. *Street*, 284 Ark. 416, 682 S.W.2d 749 (1985); *Scottish Union & National Ins. Co.* v. *Wilson*, 183 Ark. 860, 39 S.W.2d 303 (1931). And what of the attorney general? Ark. Code Ann. § 16-111-106 (1987) requires that the attorney general be given the opportunity to defend a statute against constitutional attack, and failure to do so is error. *Prather* v. *St. Paul Ins. Co.*, 293 Ark. 547, 739 S.W.2d 676 (1987).

The majority characterizes the constitutionality question as one of subject matter jurisdiction so as to provide this court with the proper avenue for raising this issue on our own. Although it is a well settled rule that subject matter jurisdiction may be raised for this first time on appeal, *Venhaus* v. *Hale*, 281 Ark. 390, 663 S.W.2d 930 (1984), subject matter jurisdiction involves a court's competence to hear a particular category of cases and the facts of this case involve the allocation of power. This appeal is from the orders of the probate judge. Surely the majority is not holding that orders of the probate court entered pursuant to Act 14 are rendered void by the retroactive operation of today's holding. If so, I venture that will prove to be a difficult precedent to live with.

There is another compelling reason why the case should be affirmed. From the outset in 1984, the orders (and there are many, eighteen by actual count) were all signed by a referee or master and, following Act 14, were then approved by the probate judge. At no time until they reached *this court* did appellants ever

---

[1] Why Section 6 is singled out is not clear. The removal of Section 6 renders the act meaningless.

object to the procedure or complain about the case being heard by a master or referee, or object that the master was exceeding his authority. No objection on any basis now argued on appeal appears throughout this entire record. The rule is almost universally recognized and followed that a party waives objection to the functioning of the master where not timely made. "If a party appears and participates in the taking of evidence before a master without objection, he cannot question the authority of the master to act, although the order or reference is defective or although no offer referring the case to the master has been entered." Corpus Juris Secundum, Vol. 30A, § 531, p. 570. "If facts are known, parties are bound to make objections to disqualification of a master before issues are joined and before hearing commences, otherwise they will be deemed to have waived objection." *DeMoville* v. *Merchants & Farmers Bank*, 186 So. 704 (Ala. 1939); *Goodrum* v. *Merchants & Planters Bank*, 102 Ark. 326, 144 S.W. 198 (1912). *Proctor* v. *Bank of New Hampshire*, 123 N.H. 395, 464 A.2d 263 (1983); *Nystrom* v. *Nystrom*, 105 So.2d 605 (Fla. Dist. Ct. App. 1958).

Appellants also complain *in this court* that the master failed to comply with ARCP Rule 53(e) in that he did not submit a report. However, the appellants registered no such complaint before the trial court. The master announced his findings and conclusions at the end of the hearing and the final order was not entered until some three months later, thus, appellants had ample opportunity to file objections. No objection on this, or any other ground, was ever offered in the trial court.

The majority concludes that the case must be reversed because the participation of the juvenile master exceeded that authorized by law. The majority states the issue to be whether the probate judge appropriately reviewed the master's findings, or merely co-signed a final order entered by the master. What is important is whether the judge recognized that the master's findings were merely advisory and that *he alone* gave finality to the case. The appellants have not even attempted to show that the orders were not the final product of the probate judge. He approved each order and there is nothing to suggest he did not fully concur in them.

The majority states that "all masters and referees appointed

to hear juvenile cases shall only submit recommendations to the probate judge." In fact, § 6 of Act 14 of 1987 also provides that a referee or master so designated (to hear juvenile cases) shall also have "all the authority and power of the judges of their respective divisions." Surely such power encompasses more than submitting mere recommendations. However, § 6 of Act 14 quite definitely prohibits masters or referees from issuing final orders. The legislature's intent as to what constitutes the "issuance" of a "final" order may be gleened from the paragraph discussing the master's ability to issue temporary orders. A temporary order issued by a master becomes a "final" order after receiving the judge's approval and signature. Therefore, the essence of the issuance of a final order does not then turn on who drafted the order, but rather on who reviews, approves, and signs the order. Although the master drew up the order in this case, by signing the order the judge reviewed and approved such and thus issued the final order.

I do not see any objection to a statutory scheme providing for permanent masters, so long as a judge is the final arbiter. Masters have been recognized as a useful arm of the courts from an early date at common law.[2] The ongoing demands of following the progress of a family involving dependent-neglected children through rehabilitative regimens are far better suited to a master or referee than to a judge. I find no authority cited in the majority opinion for this abrogation of legislative authority.

Therefore, I would affirm the probate judge's orders.

---

2 Beginning with the reign of Edward III. Cyclopedic Law Dictionary, 2d Edition.