ARKANSAS DEPARTMENT OF HUMAN SERVICES,
A Division of Children and Family Services *v.* Howard
TEMPLETON, Probate Judge, Craighead County, Arkansas
and
Arkansas Department of Human Services, A Division
of Children and Family Services *v.* Tom Keith,
Circuit/Chancery Judge, Benton County, Arkansas

89-97 & 89-102                                     769 S.W.2d 404

Supreme Court of Arkansas
Opinion delivered April 12, 1989

*Debby Thetford Nye*, General Counsel, and *S. Whittington Brown*, Deputy General Counsel, for petitioners.

*Steve Clark*, Att'y Gen., by: *Tom Gay*, Deputy Att'y Gen., for respondents.

TOM GLAZE, Justice. Petitioner, the Arkansas Department of Human Services, Division of Children and Family Services (hereafter DHS), requests this court for writs of mandamus to compel respondents, Probate Judges Howard Templeton and Tom Keith, to hear certain juvenile cases pending in their respective courts. In support of its requests, DHS asserts each judge has appointed a special master to hear juvenile matters in violation of Rule 53 of the Arkansas Rules of Civil Procedure and the specific directives of this court as set out in *Hutton* v. *Savage*, 298 Ark. 256, 769 S.W.2d 394 (1989). Because both actions filed here by DHS involve the same legal issues arising from similar circumstances, we consolidate the actions for purposes of this court's review and decision writing.

We first note that DHS requested the wrong remedy in its petitions. A writ of mandamus does not lie to control the

discretion of a trial court or tribunal. *State* v. *Nelson*, 246 Ark. 210, 438 S.W.2d 33 (1969). However, where the lower court's order is entered without or in excess of jurisdiction, we can carve through the technicality and treat the application as one for certiorari. *Wasson* v. *Dodge*, 192 Ark. 728, 416 S.W.2d 316 (1936); *see also First Nat'l Bank* v. *Roberts*, 242 Ark. 912, 416 S.W.2d 319 (1967). The settled rule is that when there is a remedy by appeal, a writ of certiorari will not be granted unless there was a want of jurisdiction, or an excess in its jurisdiction, by the court below. *State* v. *Nelson*, 246 Ark. at 217, 438 S.W.2d at 38. That want of jurisdiction or act in excess of jurisdiction must be apparent on the face of the record. *Id.* Such are the situations in the two matters pending before us.

In our recent *Hutton* decision, the court ruled that the probate court's use of a master in a juvenile case was in excess of its jurisdiction, and, in doing so, we held that any reference to a master under Rule 53 should be the exception and not the rule. We reached a similar holding with respect to circuit courts in *Collins* v. *State*, 298 Ark. 380, 769 S.W.2d 402 (1989). Actually, the ruling concerning the use of masters reiterated what he had already said in *Gipson* v. *Brown*, 295 Ark. 371, 749 S.W.2d 297 (1988). *See also State* v. *Nelson*, 246 Ark. at 218-220, 438 S.W.2d at 39-40.

In one of the cases before us, Judge Templeton, acting under Rule 53, appointed a master to hear a juvenile case, explaining that he was unable to conduct a hearing required by the Juvenile Code "due to scheduling and other conflicts." In the second case, Judge Keith, acting pursuant to Rule 53, entered similar but separate orders that appointed a master to hear four different juvenile cases. Judge Keith explained in his orders that he was "unavailable" and that the master, who had previously functioned as juvenile master for Benton County, was familiar with the facts and previous history of the four juvenile cases. DHS contends that, under the circumstances described, neither judge had authority to appoint masters and that the appointments demonstrate the continued illegal use of special masters for juvenile cases. We agree.

Some confusion was to be expected after a juvenile system operated under the auspices of the county courts, which had been

functioning for nearly 100 years, was ruled unconstitutional. Juvenile matters are no longer heard by the county courts or their referees and masters, but rather are to be decided by full-fledged courts of general jurisdiction presided over by full-time judges — an event that was long overdue.

These courts of general jurisdiction, which are now empowered to decide juvenile matters, are regulated by and subject to the applicable rules set forth in the Arkansas Rules of Civil Procedure, including, but not limited to, Rule 53. Section (B) of this rule specifically provides that the "reference to a master shall be the exception and not the rule" and except in matters of account and difficult computation of damages, "a reference shall be made only upon a showing that some exceptional condition requires it." Certainly a simple statement of unavailability or conflict by the trial judge is not a showing of exceptional conditions.

If a trial court has problems with congested dockets or conflicts in scheduling, and the prompt and proper administration of justice warrant it, the temporary assignment of judges may be had pursuant to Ark. Code Ann. § 16-10-101 (1987). Or, when the temporary replacement of a judge is necessary, such a procedure is provided under Ark. Const. art. 7, §§ 21 and 22. *Wessell Bros. Foundation Drilling Co.* v. *Crossett Pub. School Dist. No. 52,* 287 Ark. 415, 701 S.W.2d 99 (1985); *See also* Ark. R. Civ. P. Admin. Order Number 1.

██ Since courts with jurisdiction of juvenile actions now may avail themselves of the applicable laws that have been generally relied upon by general jurisdiction courts to avoid delays in trying cases on their dockets, the employment of part-time masters for this purpose should be unnecessary. A crowded or congested docket has never been determined a valid purpose for the appointment of a master under ARCP Rule 53; nor is a master appropriate because he or she is more familiar with the case or because the judge is unavailable. Clearly, Judge Templeton's and Judge Keith's appointments of masters in the juvenile cases pending in their respective courts were unauthorized and in excess of their jurisdiction. Therefore, we grant writs of certiorari quashing the judges' orders that appointed juvenile masters as well as those orders ensuing from such appointments.

Our decision today should, we think, resolve the doubts that seem to have lingered since the *Hutton* decision as it affected the use of masters in juvenile cases. Clearly, any attempt or pretense to use Rule 53 to continue the employment of masters to hear juvenile actions, as has been the situation in the past, is now contrary to the law. Although not all juvenile judgeship positions are in operation at the moment, we are confident that most of our trial judges are meeting the challenge and responsibility of hearing and deciding juvenile matters on the same par as matters concerning property and monetary issues. While a few problems or questions may remain to be resolved in implementing the state's new juvenile court structure, hopefully, the use (or more appropriately the non-use) of masters or referees by trial courts in such juvenile matters has been laid to rest by this court's decision in *Hutton* and the one we hand down today.

PURTLE, J., dissents. HAYS, J., concurs.

STEELE HAYS, Justice, concurring. I expressed my views on the use of masters in a dissenting opinion in *Hutton v. Savage*, 298 Ark. 256, 769 S.W.2d 394 (1989). I was a minority of one in that position and since the majority view was decisive I saw no need to restate it in *Collins v. State*, 298 Ark. 380, 769 S.W.2d 402 (1989), decided this week. Now the majority position is further solidified in the decision of these consolidated cases and while I have not changed my view, I see nothing to be gained by continuing to espouse a position that has no likelihood of prevailing. On that basis, and the fact that given the approach taken by the majority the petitioner is entitled to the relief sought, I concur.

JOHN I. PURTLE, Justice, dissenting. I believe the majority takes a stand which is too rigid. There is no room for any give and take. Of course it all started with *Walker v. Department of Human Services*, 291 Ark. 43, 722 S.W.2d 558 (1987), in which I concurred along with Justice Hickman. I stated in *Walker* that the legislature had the power to assign cases involving dependent-neglected children to any existing court.

I went along with the decision in *Hutton v. Savage*, 293 Ark. 256, 769 S.W.2d 394 (1989) because I agreed that the legislature could not give judges the authority to appoint another person a judge to help carry the load. I did not forsee that the opinion in

*Hutton* would be construed as prohibiting judges from appointing special masters in every situation. Masters and referees may be necessary to keep up with the demand that dependent-neglected child cases require. ARCP Rule 53(b) states that "reference to a master shall be the exception and not the rule." Cases of dependent-neglected children constitute such an exception. After all, juvenile cases are only a small part of the circuit judge's and chancellor's present caseload. We created Rule 53 and we can amend it if necessary to accommodate the requirements announced in *Walker* and *Hutton.*

The courts and the people need a bridge from the present until the new juvenile code becomes effective on August 1, 1989. This court has the authority and the duty pursuant to Article 7, Section 4, and Amendment 28 of the Constitution of Arkansas to provide a procedure which will suffice until the new law becomes effective.

The majority "can carve through the technicality" and reach the desired result, but at the same time refuse to allow trial courts to "carve through the technicality" and serve the legitimate purposes of the juvenile justice system. Certainly these cases should be decided by full-fledged judges, but judges cannot fully investigate all cases from start to finish. Judges acting on other cases are not required to attend to every detail concerning every case filed. No doubt present judges are willing to work a little harder — until the new law becomes effective.

I agree with the majority that judges and chancellors cannot anoint clones to perform their judicial functions. However, this court should not hand them a brick while they are attempting to swim the stream. Under the circumstances, I would exercise a little more tolerance in appointing masters and referees until the new law takes effect. Trial courts must have some discretion in matters such as this in order to accomplish what is demanded by the law. Generally speaking we leave much to the discretion of trial courts. Certainly this is just such an occasion. Common sense and justice dictate that we be strong enough to bend.