Sam SEXTON, Jr. *v.* ARKANSAS SUPREME COURT COMMITTEE ON PROFESSIONAL CONDUCT

89-73                                                    774 S.W.2d 114

Supreme Court of Arkansas
Opinion delivered July 10, 1989
[Rehearing denied September 11, 1989.]

*Howell, Price, Trice, Basham & Hope, P.A.*, by: *Dale Price; Sexton Law Firm,* by: *Sam Sexton III*, for appellant.

*Steve Clark*, Att'y Gen., by: *R.B. Friedlander*, Solicitor General, for appellee.

JOHN I. PURTLE, Justice. The Arkansas Supreme Court Committee on Professional Conduct voted to suspend the license of the appellant for a period of one year, but stayed the suspension until the appeal could be heard by this court. We affirm the action

taken by the Committee and dissolve the stay.

In January, 1987, Danny Haffelder and his wife, Tina Haffelder, filed a complaint against the appellant with the Committee on Professional Conduct. Following the filing of the complaint the Committee made a determination that the appellant's license should be suspended for one year. The charges were brought pursuant to our Model Rules of Professional Conduct which were adopted in 1985 (effective January 1, 1986). However, on appeal we reversed and remanded, holding that it was a violation of Due Process to charge a person under a rule that was not in effect at the time of the alleged violation. *Sexton* v. *Supreme Court Committee on Professional Conduct*, 295 Ark. 141, 747 S.W.2d 94 (1988). We stated, however, that the Committee could still proceed with the complaint under the Code of Professional Responsibility (which was in effect in 1983).

The Committee subsequently charged the appellant with violation of Disciplinary Rule 5-104(a) of the Code of Professional Responsibility. Appellant then sought prohibition, certiorari, or mandamus in which he asked this Court to order the Committee to follow the standards for lawyer discipline as adopted by the American Bar Association and to order the Committee to answer interrogatories and requests for admissions. He further asked the members of the Committee to disqualify. We declined to issue a writ and instead held that appeal was an adequate remedy. *Sexton* v. *Supreme Court Committee on Professional Conduct*, 297 Ark. 154-A, 761 S.W.2d 602 (1988).

The Committee then reconsidered the charges pursuant to DR 5-104(a). The appellant's license was again suspended for a period of one year. That order was stayed pending appeal. It is from the Committee's second decision that the present appeal is taken.

The complaint in this case grew out of a transaction between the appellant and the Haffelders on June 30, 1983. It is quite clear that the Haffelders believed that Sexton was still their attorney in this transaction, which was entered into following settlement of a personal injury claim. The appellant admits that his firm represented Danny Haffelder in the damage claim and that he was Haffelder's personal attorney at the time of the transaction. The

basic agreement was that the Haffelders would lend Sexton (or his company) $20,000 and that they would be paid back $40,000. The repayments were to be $1,000 per month, commencing one month after the transaction. The loan was guaranteed personally by Sexton, and the proceeds from the loan were used in a corporation involved in some type of coal processing or mining. The project did not survive, and the investment was evidently lost. Either the now-defunct corporation or Sexton paid the Haffelders for a period of about one year and then stopped making the payments. The Haffelders filed a suit against the appellant for collection of the balance due under the terms of the transaction, and later filed a complaint with the Committee. Sexton paid the debt before the Committee held the hearing.

At the time the loan was made to the appellant, he agreed that the Haffelders could take the proposal to their banker or a lawyer prior to signing it. They did in fact take a facsimile of the agreement to their banker for consultation. About a week after the first loan discussion, the appellants returned with the proposed agreement, executed it, and wrote a check for $20,000.

The central issue in this appeal concerns Disciplinary Rule 5-104(a), which states:

> A lawyer shall not enter into a business transaction with the client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure.

The appellant argues that he made a full disclosure and was thereafter under no duty to look after the interests of the Haffelders.

Both parties have correctly interpreted the rule to involve three elements: (1) a business transaction between the lawyer and the client; (2) differing interests in the transaction between the lawyer and client; and (3) the client's expectation that the lawyer will exercise his professional judgment for the client's protection. If these three elements are present, the lawyer's obligation under the rule may be fulfilled by the lawyer making a full disclosure to his client and making it clear that he no longer is looking after the client's interests in the matter. There is no disagreement that the

first two elements are present in this case. The appellant's argument is that the third element was not present because he agreed that the Haffelders could seek the advice of others in this matter. Alternatively, the appellant argues that, even if the third element was present, the client consented after "full disclosure" was made by the attorney.

In order to make a determination concerning the full disclosure issue, it is necessary for us to undertake a de novo examination of all the facts surrounding this transaction. See Rule 8 of the Rules of the Court Regulating Professional Conduct. When the business transaction was first mentioned, it was the client who suggested he might want to discuss it with other parties. The appellant agreed that the Haffelders could have the contract examined by anyone they chose. The clients kept the papers about six days and talked with a person or persons at the institution where they banked. From the actions and testimony of the parties, it is obvious that the clients were relying on the appellant to protect them and look after their interests, even though they had discussed the contract with their banker. Danny Haffelder stated: "I trusted the man with everything I had." It is equally obvious that the clients felt they were going to double their money in a reasonably short time. (The rate of return under the terms of the contract far exceeded any normal investment they could have made.)

The appellant took very little affirmative action, if any, to inform his clients of the highly speculative nature of the transaction. The only thing they knew was that Sexton was in charge and it was a "coal business." The appellant was a sophisticated, intelligent, and experienced attorney, while his clients were not at all conversant in these matters. The appellant should have revealed the facts and the economic status of the business venture he wanted his clients to invest in. He should have told his clients that the venture could fail and that, if it did, he would pay the obligation personally. He also should have told them, among other things, that the note was usurious and that he might be able to avoid full repayment if he so chose. His silence in this regard no doubt led his former clients to believe that this was a risk-free undertaking. It was not. He should have told his clients that he would not be able to pay promptly if the venture failed. Most certainly he should have expressly told them he would no longer

serve as their attorney. Due to the nature of this transaction, the appellant was under a duty to affirmatively point out the details of this venture, including every circumstance and fact, to enable his clients, or former clients, to make an intelligent decision.

We also look to the action taken by the attorney after the business venture turned sour. He did not keep his word to personally make the payments to the clients, and it was necessary for the clients to file suit before the appellant paid the balance of the money. The clients eventually received all the money they were supposed to receive under the terms of the contract, but they had to obtain the services of other counsel to recover it.

■ The Arizona Supreme Court, in the case of *Matter of Neville*, 708 P.2d 1297 (Ariz. 1985), ruled that although there might not be a formal attorney-client relationship between the parties at the time of a transaction, the provisions of DR 5-104(a) still applied. The test in deciding the applicability of this disciplinary rule is whether an ordinary person would look to the lawyer as a protector rather than as an adversary. The Arizona court assumed that the lawyer informed the client that he was not acting as attorney for the client in the transaction in question. The court stated:

> We adopt the view of the cases which hold that full disclosure requires not only that the lawyer make proper disclosure of non-representation, that he also must disclose every circumstance and fact "which the client should know to make an intelligent decision concerning the wisdom of entering the agreement." [Citation omitted.] The rule is strict. The lawyer must give the client that information which he would have been obliged to give if he had been counsel rather than interested party, and the transaction must be as beneficial to the client as it would have been had the client been dealing with a stranger rather than with his lawyer. [Citation omitted.] Thus, "full disclosure" requires not only a full explanation of the divergence in interest between the lawyer and the client and an explanation about the need to seek independent legal advice, but also "a detailed explanation of risks and disadvantages to the client which flow from the agreement." [Citation omitted.]

■ In reviewing this case de novo from the record of the proceedings before the Committee, we have determined that the clients expected the appellant to exercise his professional judgment for their protection in this transaction. The appellant simply did not make the "full disclosure" required of him by DR 5-104(a) when he solicited the loan from his clients.

■■ The appellant's second argument is that the Committee erred in assuming judicial functions constitutionally reserved to the courts. The right to practice law is a privilege granted by the state. The privilege cannot be denied in an arbitrary or invidiously discriminatory manner. *McKenzie* v. *Burris*, 255 Ark. 330, 500 S.W.2d 357 (1973). It cannot be denied in a manner inconsistent with due process of law. In the case of *In re Murchison*, 349 U.S. 133 (1955), the United States Supreme Court stated that a fair trial by a fair tribunal is a basic requirement of due process and this rule applies to administrative agencies as well. See also *Gibson* v. *Berryhill*, 411 U.S. 564 (1973).

The judicial power of the state of Arkansas, pursuant to Article 7, section 1, is vested in the Supreme Court, circuit courts, and such chancery and other courts as may be created by the legislature. Article 7 goes on to establish the responsibilities and duties of various courts.

■ The source of power to establish the Commission is in Amendment 28, which consists of a single sentence: "The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law." The Amendment is stated in mandatory language. This court is affirmatively charged with the duty of making and, by implication, of enforcing rules governing the practice of law and the conduct of lawyers. See Per Curiam dated January 19, 1972, 251 Ark. 800, 483 S.W.2d 174 (1972). This per curiam stated that "[t]he duty necessarily extends to the enforcement of the rules as well as their promulgation, for without enforcement the purpose of the Amendment would fail." See also our opinion in *McKenzie* v. *Burris*, supra, where we stated: "Amendment 28 certainly put to rest for all time any possible question about the power of the courts to regulate the practice of law in the state. There can be no doubt that the power of the judicial department, acting through

this court, is, in this respect, exclusive and supreme under this amendment, if the power was not already inherent in the courts."

The appellant in effect argues that this court has established an inferior court and named it the Arkansas Supreme Court Committee on Professional Conduct. His argument is bottomed on our recent decisions concerning "masters" and juvenile judges. See *Hutton v. Savage*, 298 Ark. 256, 769 S.W.2d 394 (1989); and *Arkansas Department of Human Services* v. *Templeton*, 298 Ark. 390, 769 S.W.2d 404 (1989), which held that trial courts may not set up separate courts and judges such as had been done in the case of standing masters and juvenile judges. These designated representatives purported to serve as judges. We agree that the Constitution does not permit the appointment of temporary or part-time judges by other judges.

The appellant insists that the Committee should fulfill its functions by gathering information, investigating complaints, and making recommendations to this court. He argues that the Committee has gone beyond those functions and become a court in its own right through the exercise of the power of this court in suspending the appellant's license.

In establishing this Committee, we have presumed the honesty and integrity of those appointed. Certainly we could never tolerate the denial of the right to practice law without fully affording due process to the practicing attorney. Amendment 28 did not specify the procedure or the manner in which we would regulate the practice of law. We have adopted rules and have declared that the right to appeal a decision of the Committee exists. See *Sexton v. Supreme Court Committee on Professional Conduct*, 297 Ark. 154-A, 761 S.W.2d 602 (1988).

■ The appellant has several arguments concerning the procedural rules which should be followed by the Committee. We have adopted the Rules of Professional Conduct, which furnish a format for the presentation of evidence and the procedure to be followed by the Committee. The rules governing the procedure before the Committee are uncomplicated and are written in ordinary language. In some opinions we have made reference to various rules and proceedings by which the established courts are bound. The Committee is in the nature of an administrative agency, which is not bound by rules of the courts. However, we

have not at any time attempted to require the Committee to strictly adhere to the Rules of Evidence or the Rules of Procedure. To do so would unduly complicate and probably lengthen the proceedings before the Committee. We have no hesitancy in changing the rules if it has been brought to our attention that a change would improve the discharge of the duties and functions of the Committee and would serve the best interests of the bar. See *Walker* v. *Supreme Court Committee on Professional Conduct*, 275 Ark. 158, 628 S.W.2d 552 (1982).

The appellant argues that the Committee erred in refusing to deem as admitted certain requested admissions and in failing to comply with Rule 52 of the Arkansas Rules of Civil Procedure. These are rules which concern proceedings in the courts. Since we review appeals from the Committee de novo, we are not concerned so much with the procedure followed as we are with reaching the proper results. See *Davis* v. *Merritt*, 252 Ark. 659, 680, 480 S.W.2d 924 (1972).

We have reviewed all of our prior decisions concerning the professional conduct of attorneys and have not found a case directly on point. We believe our rules of professional conduct relating to the practice of law are good ones. The fundamental purpose of these rules is to give the attorneys professional guidance and to inform them of the procedure that will be followed if disciplinary action is necessary.

In reviewing the actions of the Committee we look to the preponderance of the evidence and affirm the action taken by the Committee unless it is clearly against the preponderance of the evidence. See *Muhammed* v. *Supreme Court Committee on Professional Conduct*, 291 Ark. 29, 722 S.W.2d 280 (1987). We have complied with the provision of Amendment 28 and find that the Committee did not deny the appellant his constitutional or statutory rights.

We briefly discuss the appellant's argument that the Committee should have recused because some members had expressed opinions prior to the hearing. Rule 5(B)(1) of the Rules of the Court Regulating Professional Conduct states that the executive secretary "shall also advise that the attorney may request a hearing before any vote is taken by the Committee," and in the absence of such a request the file will be sent to the

Committee members who will vote by a ballot. That is exactly what occurred in this case. The mere happenstance that a trier of fact has expressed an opinion on a matter under consideration does not automatically disqualify that person from further participation. Frequently we reverse a trial judge and remand the case for another trial. Even though we may reverse a trial judge, on remand the judge is considered fair and impartial.

The argument concerning procedural due process by the courts and administrative agencies was discussed in *Withrow* v. *Larkin*, 421 U.S. 35 (1975). The *Withrow* opinion cited with approval the case of *FTC* v. *Cement Institute*, 333 U.S. 683 (1948), in which a party had demanded that the commission members disqualify themselves because, long before the Commission had filed its complaint, it had investigated the parties, and its members had testified before congressional committees concerning the legality of a pricing system. Some of the members had disclosed their opinion that the system was illegal. The Court in *FTC* stated:

> [T]he fact that the Commission had entertained such views as the result of its prior *ex parte* investigations did not necessarily mean that the minds of its members were irrevocably closed on the subject . . . .

The case of *NLRB* v. *Donnelly Garment Company*, 330 U.S. 219 (1947), stated:

> Certainly it is not the rule of judicial administration that, statutory requirements apart . . . a judge is disqualified from sitting in a retrial because he was reversed on earlier rulings. We find no warrant for imposing upon administrative agencies a stiffer rule, whereby examiners would be disentitled to sit because they rule strongly against a party in the first hearing.

We find nothing in the record to indicate that the members of the Committee did not consider this matter on its merits and vote in accordance with their convictions.

This case has already been before this court twice. There can be no more positive proof that we are protecting the rights of the appellant and at the same time looking to our obligation to the public. We hold that the preponderance of the evidence supports

the Committee's conclusion that the appellant did not make a full disclosure as required by DR 5-104(a). Therefore, the decision of the Committee to suspend the appellant's attorney's license for a period of one year is affirmed.

GLAZE, J., dissents.

TOM GLAZE, Justice, dissenting. The majority opinion properly adopts a standard by which an attorney's conduct or actions can be measured to determine if the attorney, who has a conflict of interest with a client, has violated Disciplinary Rule 5-104(a). In this connection, the majority adopts the rule set out in *In re Neville*, 147 Ariz. 106, 708 P.2d 1297 (1985), and I agree with this part of the majority's decision. However, I cannot agree with the court's decision that this court is constitutionally empowered to establish a committee which may serve in a judicial capacity with the authority to suspend attorneys for their professional misconduct. In my view, the majority court assumes more authority and power than it is given by the Arkansas Constitution.

The majority court assumes for itself this power to regulate *and* suspend attorneys by virtue of amendment 28 to the Arkansas Constitution, which was passed by the vote of the people in 1938 and which provides as follows:

> The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law.

Clearly, this court has the authority under amendment 28, directly or impliedly, to provide all necessary and reasonable means by which attorneys' conduct may be regulated. Such authority does not, and should not, include the authority to appoint or establish a committee with authority that conflicts with existing powers already given by the constitution to other courts.

In the case of *In re Dodrill*, 260 Ark. 223, 538 S.W.2d 549 (1976), this court, quoting from *Feldman* v. *State Board of Law Examiners*, 438 F.2d 699 (8th Cir. 1971), stated the following:

> The principle is firmly established that the judicial branch of government, acting through the courts, has exclusive

jurisdiction to *admit, control and disbar* attorneys. (Emphasis added.)

The Arkansas Constitution provided that the *circuit courts shall have jurisdiction in all civil* and criminal *cases* the exclusive jurisdiction of which may not be vested by the constitution in some other court, *see* Ark. Const. art. 7, § 11, and our court repeatedly has held the *proceedings involving* the *disbarment* of an attorney *are civil* in nature. *In Re: Dodrill*, 260 Ark. 223, 538 S.W.2d 549 (1976); *Weems v. Sup. Ct. Comm. on Prof. Conduct*, 257 Ark. 673, 523 S.W.2d 900 (1975); *Hurst v. Bar Rules Comm. of the State of Arkansas*, 202 Ark. 1101, 155 S.W.2d 697 (1941). In *Dodrill*, the court held that, in a disbarment proceeding, the trial court [circuit court] had jurisdiction with the power and authority to impose the lesser penalty, *i.e.*, to conditionally *suspend* the petitioner's [attorney's] license.

The majority would quibble that the supreme court committee would have authority to suspend an attorney's license but must defer to the circuit (or chancery) court when disbarment proceedings are involved.[1] Such a distinction runs a very fine line and has little in the way of rationale to support it. For example, no rule or authority exists that I can find which would prevent the committee from suspending an attorney indefinitely, that is, if the committee decided to impose such a sanction. However, even if the committee chose only to suspend an attorney for one or two years, the practical result is the same as a disbarment — the attorney cannot practice law. When comparing suspension and disbarment proceedings, it is also noteworthy that Ark. R. Prof. Conduct 16 treats attorneys who are disbarred or suspended in other states in the same manner when taking action against them in Arkansas.

In sum, amendment 28 contains no terms or language that endow this court with the power to appoint a committee to act in a judicial function so as to enforce the rules this court promulgates to regulate attorneys. Amendment 28 was passed in 1938, and no one even suggested this court had such power, at least until the court, by per curiam order dated March 11, 1985, adopted its

---

[1] In view of Ark. Const. art. 7, § 11, I would take issue with this court's rules which allow the committee to file its complaint in chancery court.

present rules to regulate the conduct of attorneys. The reason for the nearly fifty-year delay between the passage of amendment 28 and the court's 1985 per curiam order was, I submit, because our constitution's mandates harmoniously provide for the supreme court to regulate the professional conduct of attorneys and for the circuit court to provide the mechanism for trying such matters. In construing and applying amendment 28 and the judicial article (particularly Ark. Const. art. 7, § 11) in this manner, an attorney is also availed the panoply of civil rules of procedure which are normally allowed in civil proceedings. Under the majority's decision, such procedures are not available.

For the foregoing reasons, I would reverse the committee's decision with directions for it to file this matter in circuit court.