Margaret Ullrich GOLDSMITH, Mother, and Lee Goldsmith, Father of: Samantha Goldsmith, DOB 7/11/78 and William L. Goldsmith, DOB 8/27/79 v. ARKANSAS DEPARTMENT OF HUMAN SERVICES

90-47                                                         787 S.W.2d 675

Supreme Court of Arkansas
Opinion delivered April 23, 1990

*Raymond C. Smith, P.A.*, for appellant.

*S. Whittington Brown*, Deputy Counsel, Office of Chief Counsel, Department of Human Services, for appellee.

JACK HOLT, JR., Chief Justice. This appeal is from an order of the probate court finding that the appellants, Margaret and Lee Goldsmith, were unfit to have their children, Samantha and William Goldsmith, returned to their custody and that it was in the best interests of the children that parental rights be terminated. The probate judge appointed the appellee, Arkansas Department of Human Services (Department), as the children's guardian, with the power to consent to their adoption without notice to, or consent of, the natural parents.

From that order, the Goldsmiths appeal and allege three points of error: 1) that the appointment of a special master and a master pursuant to Act 14 of 1987 violates Ark. Const. art. 7 and amounts to the creation of a substitute judge, 2) that the authority to terminate parental rights and to permit the appointment of a guardian with the power to consent to adoption without notice to, or the consent of, the parents as provided by Act 424 of 1985 has been ruled unconstitutional and has been repealed, and 3) that the Department failed to provide remedial support

services designed to reunite them with their children and to substantially reduce the risk of harm to their children.

We find no merit in any of the points of error and affirm.

The Goldsmiths initially allege that the appointment of a special master and a master pursuant to Act 14 of 1987 violates Ark. Const. art. 7 and amounts to the creation of a substitute judge.

The Arkansas Constitution, article 7 § 4 as amended by Amendment 24, provides that in each county the judge of the court having jurisdiction in matters of equity shall be the judge of the court of probate, and shall have such exclusive original jurisdiction in matters relative to guardians as is now vested in courts of probate, or may be hereafter prescribed by law.

In *Hutton v. Savage*, 298 Ark. 256, 769 S.W.2d 394 (1989), we held that section 6 of Act 14, which grants judges the right to appoint juvenile masters with such powers as the judges direct and which purports to vest in the masters the full authority of the judges of their respective divisions, constituted an unauthorized grant of legislative authority and the impermissible creation of what amounted to substitute judges.

However, the Goldsmiths' reliance on *Hutton v. Savage, supra*, is misplaced because the order appealed from in that case was a final order entered by the master that reflected his findings and judgments and which was merely co-signed by the probate judge. *See also Collins v. State*, 298 Ark. 380, 769 S.W.2d 402 (1989).

In contrast, although a magistrate was utilized during the intermediate phases of this case, prior to our holding in *Hutton v. Savage, supra*, the final order terminating the Goldsmiths' parental rights, from which the Goldsmiths appeal, was entered by the probate judge after he conducted a lengthy hearing to make a determination on the issue. From the extensive testimony presented at the hearing, the probate judge found that the Goldsmiths were unfit to have Samantha and William returned to their custody and that it was in the best interests of the children that parental rights be terminated. Consequently, the fact that the probate judge presided over the hearing and entered the final order terminating the Goldsmiths' parental rights

removes this case from the purview of *Hutton* v. *Savage, supra.*

In their second point of error, the Goldsmiths contend that the authority to terminate parental rights and allow the appointment of a guardian with the power to consent to the adoption without notice to, or consent of, the parent as provided by Act 424 of 1985 has been ruled unconstitutional and been repealed by Act 273 of 1989.

■ The Goldsmiths cite no authority for their contention that Act 424 has been ruled unconstitutional; accordingly, we decline to address that aspect of this point of error because the argument is not convincing. *Kiefer* v. *State*, 297 Ark. 464, 762 S.W.2d 800 (1989).

In this case, on April 26, 1989, the probate judge presided over the hearing to determine the termination of the Goldsmiths' parental rights. The order terminating the Goldsmiths' parental rights was entered on May 18, 1989, and specifically incorporated the authority of Ark. Code Ann. § 9-9-303 (1987) as a basis for the order. Act 273 of 1989, which repealed sections 9-9-303(a)—(e) and 9-9-304, became effective on August 1, 1989.

The Goldsmiths' reliance on *Green* v. *Abraham*, 43 Ark. 420 (1884), for the proposition that the initiation of a suit does not vest in a party the right to a particular decision, and the suit must be determined on the law in effect at the time judgment is rendered, as opposed to the time when the lawsuit was commenced, is also misplaced. *Green* dealt with the retrospective application of a curative law concerning the quieting of title to real property.

■ In contrast, Act 273 is not retrospective and only became effective after the final order of the probate judge. As a result, the subsequent repeal of section 9-9-303 does not affect the validity of the probate judge's final order entered before the effective date of Act 273.

Finally, the Goldsmiths argue that the Department failed to provide remedial support services designed to reunite them with their children and to substantially reduce the risk of harm to the children.

■ On appeal, this court reviews probate cases *de novo* on

the record. We do not reverse unless the chancellor's findings are clearly against the preponderance of the evidence. *Courtney* v. *Courtney*, 296 Ark. 91, 752 S.W.2d 40 (1988).

The Goldsmiths' argument focuses on the Department's termination of counseling services to them after 18 months of counseling. They claim that the Department's prerequisite for continued counseling, that Mr. Goldsmith admit to child abuse, placed an unreasonable burden on them in order to continue receiving Department counseling services.

Although the Goldsmiths cite specific testimony from the hearing as to their progress in parenting skills, marital relationship, and relationship with their children, they apparently overlook the fact that the bulk of their testimony was in reference to the effects of the services provided by the Department. They also overlook the fact that there were two major reasons for removing the children from their home: 1) the unsanitary home environment, and 2) the allegation of sexual abuse by Mr. Goldsmith.

The evidence does show inconsistent progress in improving the Goldsmiths' home environment, but it also demonstrates that the services of a homemaker were provided to the Goldsmiths by the Department for a six month period, during which time the home environment conditions improved. However, due to Mrs. Goldsmith's change in work schedule from the night shift to the day shift, which prevented her from being at home during the homemaker's work hours, the homemaker was unable to continue visiting the Goldsmith home, and the conditions in the home deteriorated.

In addition, despite 18 months of counseling services provided by the Department, the issue of sexual abuse had not been resolved. Mr. Goldsmith denied the allegation, and Mrs. Goldsmith continued her disbelief of the accusation. At the hearing to determine the termination of parental rights, a social worker testified that Samantha related that Mr. Goldsmith had touched and kissed her private parts and that she had touched and kissed his private parts. Subsequently, Samantha indicated that William was also being sexually abused by his father, and William related that his father had touched his private parts.

In an effort to facilitate resolving the issue of sexual abuse,

the Department also worked with the Prosecuting Attorney to arrange immunity for the Goldsmiths so that an admission could be made without fear of prosecution, but the Goldsmiths did not take advantage of the offer.

The probate judge made specific findings that Samantha and William had suffered sexual abuse by Mr. Goldsmith, noting Samantha's sexual acting out as well as their counselor's testimony. Both Samantha and William have intellectual limitations that were a factor in assessing the validity of the sexual abuse allegations and which were considered as making them particularly susceptible to further abuse should they be returned to the Goldsmiths' home.

Consequently, the evidence of the Department's efforts to improve the unsanitary home environment and unhealthful living conditions by making homemaker services available and the Department's attempt at resolving the issue of sexual abuse by providing 18 months of counseling supports the chancellor's findings, and his findings are not clearly against the preponderance of the evidence.

Affirmed.