John GULLICK *v.* ARKANSAS DEPARTMENT of HUMAN
SERVICES

95-830                                              931 S.W.2d 786

Supreme Court of Arkansas
Opinion delivered November 4, 1996

*Steven S. Zega,* for appellant.

*Deborah C. Reagan,* for appellee.

BRADLEY D. JESSON, Chief Justice. This appeal is brought by
John Gullick, the father of Angela Gullick. He appeals from two
orders of the juvenile division of chancery court. The first order,
entered April 17, 1995, placed Angela in the custody of the Depart-
ment of Human Services. The second order, entered April 24,
1995, denied Mr. Gullick's petition for a writ of *habeas corpus*
seeking Angela's return to parental custody. We affirm.

Angela is the younger of two daughters of John and Shariee
Gullick. The girls have lived with their father most of their lives,
their mother not having been present for many years. The older
daughter, Julia, was voluntarily placed into foster care by John
Gullick in 1993. In November of 1994, the Department of Human
Services began an investigation into allegations that Mr. Gullick had
physically abused Angela. The investigation revealed that on No-
vember 10, 1994, Angela, along with her stepmother Debbie Gul-

lick and Debbie's child Amanda, returned home from a meeting to find John Gullick enraged and possibly intoxicated. Mr. Gullick wrapped a jacket around Angela's neck and tried to choke her. Angela was twelve years old at the time. She is also blind.

Debbie Gullick left the home the next day, taking both Amanda and Angela with her to a women's shelter in Fayetteville. Mrs. Gullick found her own place in December and moved out of the shelter. During this period, she maintained physical custody of Angela. Divorce proceedings began between Debbie and John Gullick. During the course of those proceedings, John Gullick asked the chancellor to return custody of Angela to him. Debbie Gullick, having no biological relation to Angela, was required by the chancellor to return Angela to her father. The chancellor made his ruling on Wednesday, January 25, 1995. That same day, the Washington County prosecutor's office filed a Family In Need of Services (FINS) petition in the juvenile division of chancery court. The petition called for a hearing the following Monday and prayed that the court order disposition of the care, custody and control of Angela. By amended petition on January 27, the prosecutor incorporated the affidavit of Debbie Gullick, which described the November 10 incident.

After a request for a continuance by John Gullick, the hearing was held on Thursday, February 2, 1995. The prosecutor offered substantial evidence that John Gullick wrapped a jacket around Angela's neck and tried to choke her on November 10. There was also evidence that John Gullick had an alcohol-dependency problem, had threatened witnesses regarding their testimony, and had attempted suicide. Finally, Ms. Weller, a child advocate at the Fayetteville women's shelter, testified that Angela had told her that she would run away if sent back to her father and that she would rather kill herself than be returned to his custody.

At the close of the hearing, the prosecutor and the guardian *ad litem* recommended that Angela be placed in foster care. The prosecutor told the court that she was most concerned about Angela's immediate safety and that she considered the situation an emergency. The judge declared that he wanted to put Angela in a safe place and was especially mindful of Angela's statements that she might run away or kill herself if returned to her father's custody. He ordered Angela placed into the custody of the Department of Human Services and ordered the preparation of a case plan with an

eye toward reunification of the family.

The court's ruling was memorialized in an order entered April 17, 1994. In the interim between the hearing and the entry of the order, John Gullick filed a petition for a writ of *habeas corpus*. In the petition, he claimed that the court was required by Ark. Code Ann. § 9-27-328 (Repl. 1993) to make specific findings before removing a child from a parent's custody and that, in the absence of such findings, custody of Angela should be returned to him. The court denied the petition by order entered April 24, 1995.

On appeal, John Gullick argues that a juvenile court cannot deprive him of the custody of his child unless the court takes the steps and makes the findings mandated by § 9-27-328(a).[1] That statute, as it appeared on February 2, 1995, read as follows:

> Before a juvenile may be removed from the parent, guardian, or custodian of the juvenile by order of a juvenile court, excluding commitments to youth services centers, the court shall order family services appropriate to prevent removal or to reunify the family and, in its orders, make these specific findings:
>
> (1) Whether removal of the juvenile is necessary to protect the juvenile, and the reasons therefor;
>
> (2) Which family services were made available to the family before removal of the juvenile;
>
> (3) What efforts were made to provide those family services relevant to the needs of the family before the removal of the juvenile;
>
> (4) Why efforts made to provide the family services described did not prevent removal of the juvenile; and
>
> (5) Whether efforts made to prevent removal of the juvenile were reasonable, based upon the needs of the family and the juvenile.

These findings are not to be viewed as mere formalities. Congress requires that, before a state may be eligible for federal match-

---

[1] The 1995 amendments to § 9-27-328 contained in Acts 533 and 1337 of 1995, were not in force at the time of the February 2, 1995 hearing.

ing funds, the removal of a child from the home must be the result of a judicial determination that "reasonable efforts" were made, prior to the placement of a child in foster care, to prevent or eliminate the need for removal of the child from the home and to make it possible for the child to return to his home. *See* 42 U.S.C. § 671(a)(15) and § 672(a)(1). Public Law 96-272, popularly known as the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 670 – 676 (1985 and Supp. 1996), was passed by the Congress for the purpose of shifting emphasis in federal programs toward preventive services to allow children to remain safely at home rather than being placed in foster care. See generally *In Interest of S.A.D.*, 382 Pa. Super. 166, 555 A.2d 123 (1989). However, Arkansas law recognizes that there are certain situations in which it may be impractical or unwise to leave a child in the home. Under Ark. Code Ann. § 9-27-328(b), the federal requirement that reasonable efforts be made to prevent removal of a child from the home is deemed to have been met in the following situation:

> Where the state agency's first contact with the family occurred during an emergency in which the juvenile could not safely remain at home, even with reasonable services being provided, the responsible state agency shall be deemed to have made reasonable efforts to prevent or eliminate the need for removal.

Given the evidence in this case, Angela Gullick could not remain safely at home with her father. While living with him on November 10, she had been subject to serious and frightening physical abuse. Further, there is no question that the situation necessitating her removal constituted an emergency. After the November 10 incident, Angela was immediately removed from the household under the protection of her stepmother. When it became clear during the divorce proceeding that Angela would be returned to her father's custody, the prosecutor's office took prompt action, filing a petition and seeking an immediate hearing.

■ Mr. Gullick argues that the state agency's "first contact" was not during an emergency, as required by subsection (b). He points to the fact that the DHS began investigating the November 10 incident shortly after it occurred and that this "first contact" occurred long before a petition was filed by a state agency. Even if we were to consider the investigation to be the "first contact" for purposes of this statute, the investigation occurred as the result of an

emergency situation, that being the serious physical abuse of the child by her father. In any event, the first affirmative action taken by a state agency for the purpose of seeking a custody disposition occurred on January 25, 1995, the very day when it appeared that Angela would be returned to her father's custody. Under the disturbing circumstances of this case, such a return to parental custody constituted an emergency.[2]

Affirmed.

GLAZE, J., concurs.

TOM GLAZE, Justice, concurring. I concur. At oral argument, the question was raised concerning whether a final order had been entered in this cause below from which appellant John Gullick could bring an appeal. In my opinion, there was not.

The parties agree that this action started as a family in need of supervision (FINS) case, and the custody of Gullick's child was placed with the Department of Human Services (DHS). In such cases, DHS is to produce a case plan within thirty days of placement and the case is subject to a periodic six-month court review until a permanent order of custody is entered or the juvenile is returned to the parent or the court has discontinued orders for family services. *See* Ark. Code Ann. §§ 9-27-328, 9-27-332, 9-27-337 (Supp. 1995).

This court has held many times that an order, decree, or judgment must dismiss the parties from the court, discharge them from the action or conclude their rights to the subject matter in controversy before it is appealable. This court has also held that a trial court's temporary order awarding custody of a child is not appealable if such custody case remains pending subject to a trial on the merits. *See Chancellor* v. *Chancellor*, 282 Ark. 227, 667 S.W.2d 950 (1984); Ark. R. App. P. 2(a). Citing the *Chancellor* case, the court of appeals in *Jones* v. *Jones*, 41 Ark. App. 146, 852 S.W.2d 325 (1993), stated the rule as follows:

> . . . the Arkansas Supreme Court clarified the law regarding appealability of temporary child custody orders by holding

---

[2] The Department of Human Services filed a motion to strike a portion of the appellant's record and abstract. That motion is rendered moot by our decision.

that a mere temporary award of custody pending trial on the merits is not appealable, but an award of custody, even if expressly stated to be temporary, is final for purposes of appeal if the issue of custody was decided on the merits and the parties have completed their proof. In the case at bar, the appellant's motion to expedite is grounded on her assertions that she had not yet completed her proof in this case. Therefore, the decree in this case is a temporary award pending trial on the merits, and is nonappealable pursuant to *Chancellor v. Chancellor.*

In the present case, the Washington County Juvenile Court entered an order dated April 17, 1995, finding (1) the child and her family are in need of services, (2) the child should be placed with DHS, (3) Mr. Gullick was directed to perform a number of duties (submit an affidavit of financial means, sign a release for certain information, and submit to drug testing), and (4) the court would conduct periodic six-month reviews. Obviously, since the trial court ordered certain directives to be done and other hearings to be conducted in the future, the order was temporary and under the rationale of the *Chancellor* and *Jones* cases, was not appealable.

I have looked elsewhere without success to determine if there might be a case, rule, or statute under which a parent might appeal a temporary custody order entered in a FINS or dependent-neglect case. Instead, I find that Ark. Code Ann. § 9-27-343(a) (Repl. 1993), requires that all appeals from juvenile court shall be made to the Arkansas Supreme Court or Court of Appeals *in the same time and manner provided for appeals from chancery court.* (Emphasis added.) Thus, § 9-27-343(a) appears consistent with the rule set out above in the *Chancellor* and *Jones* cases. I would further point out that *Chancellor* in particular cited Ark. R. App. P. 2(a) when holding that a temporary custody award is not a final appealable order.[1]

At oral argument, Gullick referred to the language in § 9-27-343(c) and suggested that that subsection anticipates an appeal of an out-of-home placement decision, since it provides that, "if a final decision from the appellate court is not rendered within six months from the date of entry of the notice of appeal, the Director of the

---

[1] Rule 2(a) sets out what orders may be appealed from a circuit, chancery, or probate court.

Administrative Office of the Courts shall designate either a foster-care magistrate or a juvenile judge of another court to conduct a review of the case." While that language is bothersome and confusing, I would submit subsection (c), as enacted under Act 273 of 1989, was a part of the General Assembly's failed effort to provide appointed magistrates (or masters) to hear juvenile cases. This court held that the appointment of such officials constituted an unauthorized grant of legislative authority and an impermissible creation of what amounts to substitute judges. *See Hutton* v. *Savage*, 298 Ark. 256, 769 S.W.2d 394 (1989).

For the reasons stated above, I believe Gullick's appeal should be dismissed, since he appealed from a nonappealable order. At the same time, I would like to suggest that this court's Committee on Civil Practice or the General Assembly study and determine if, for appeal purposes, a temporary custody order entered in a juvenile court's FINS or dependent-neglect hearing should be considered differently from one entered in a chancery court proceeding. If so, a rule or law should be promulgated or enacted clearly providing for such an appeal.