Cite as 2019 Ark. App. 591

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-19-463

| | |
|---|---|
| JONATHAN TERRY<br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND MINOR<br>CHILD<br>APPELLEES | **Opinion Delivered** December 11, 2019<br><br>APPEAL FROM THE WASHINGTON<br>COUNTY CIRCUIT COURT<br>[NO. 72JV-17-932]<br><br>HONORABLE STACEY<br>ZIMMERMAN, JUDGE<br><br>REVERSED AND REMANDED |

## BRANDON J. HARRISON, Judge

This appeal concerns the termination of a parent's rights to his child. We ordered supplemental briefing in this case on 2 October 2019 because significant changes in Arkansas's termination-of-parental-rights law occurred since this appeal has been pending. *See* Act of Feb. 28, 2019, No. 541, § 1, 2019 Ark. Acts 3469. In the opinion that ordered supplemental briefing, we asked the parties to answer the following questions:

1. Does Act 541 apply to this appeal? Why or why not?

2. Does Act 541 resolve any issues raised in the briefs that have already been filed in this case and based on the record now on file with this court's clerk? Why or why not?

Some old caselaw from our supreme court indicates that a case should be decided under the law in effect when the appellate court issues its decision. *Green v. Abraham*, 43 Ark. 420, 424 (1884) ("If a case is appealed, and pending the appeal the law is changed, the appellate

court must dispose of the case under the law in force when their decision is rendered.") (internal quotes and citations omitted). In the area of juvenile law, however, *Green* no longer applies. Though it misstated the holding in *Green*, our supreme court in *Goldsmith v. Arkansas Department of Human Services*, 302 Ark. 98, 787 S.W.2d 675 (1990), declined to apply a change in the law that occurred after a termination order had been entered but before the appeal of the order was decided on appeal. Therefore, we will follow the *Goldsmith* approach in this case.

Act 541, among other things, provides a new ground for terminating a parent's rights to a child. Going forward, a parent may face a petition to terminate "if a parent has not established paternity or significant contacts with the child" because the General Assembly enacted legislation that places the burden on a putative parent—and no longer on the Arkansas Department of Human Services—to establish paternity of a child in the dependency-neglect context. Act 541, § 6 (amending Ark. Code Ann. § 9-27-341(b)(3)(B)(x)); Ark. Code Ann. §§ 9-27-316(h)(4)(A), -325(o)(4) (stating obligation of putative parents). In this case, however, we agree with parent counsel's supplemental brief that the changes wrought by Act 541 do not apply to this appeal. That is why we have applied the law as it existed before Act 541 took effect to the final order now on appeal.

I. *The Circuit Court Proceedings*

In November 2017, two children were removed on an emergency basis given complaints that their mother, Christina Tortorello, had neglected them. Jerry Strode was identified as the putative father of nine-year-old J.S. Jonathan Terry was identified as the

2

putative father of four-year-old A.T.  DHS believed that Terry was incarcerated when the children were placed in emergency custody.

The dependency-neglect case eventually moved to the termination phase.  During the hearing on DHS's petition to terminate Terry's rights to A.T., which was held on 4 December 2018, prior orders in the dependency-neglect case were admitted as evidence.  The orders are important to discuss in some detail because they reveal how the circuit court failed to properly address Terry's parental status.

The November 2017 probable-cause order shows that Terry was not present at the hearing, and the court found that "the whereabouts of all three parents are currently unknown."  The court ordered Terry to comply with certain conditions, like weekly random drug screens, and it ordered DHS to serve Terry "with a copy of the summons, petition, and notice of the adjudication hearing as required by law."

The January 2018 adjudication order reflects that Terry was not present at the adjudication hearing and states that the "father of [A.T.], Jonathan Terry, is incarcerated."  Yet the order also recites that Terry "was served with a copy of the summons, petition, and notice of hearing by warning order" in December 2017.  Among other things, the court ordered that Terry was to have no contact with the children, and he was ordered to complete twelve hours of parenting classes.  The children's mother was ordered to pay child support; Terry was not.  The record also contains an affidavit and proof of service that a summons, a petition for emergency custody, an ex parte dependency-neglect order for emergency custody, and a probable-cause order were served on Terry at this address:  "P.O.

3

Box 180, Brickeys, AR 72320." Terry said he never received these papers. (More on this later.)

An April 2018 review order shows that Terry was not at the review hearing either. And a May 2018 review order states that DHS

> has had no contact from Jonathan Terry and he is not participating in the case. Jonathan Terry is currently incarcerated at the East Arkansas Region Unit of the Arkansas Department of Corrections [sic]. He does not appear today. He has made no progress towards alleviating or mitigating the causes of the juveniles' removal from the home or completing the court orders and requirements of the case plan.

The order also states that DHS has made reasonable efforts to provide family services to achieve the goal of reunification. But no specific services that were supposedly given to Terry as a parent are listed in the order.

The November 2018 permanency-planning order states that Jonathan Terry was not present at the permanency hearing. In its planning order, the circuit court found that DHS caseworker Eugenia Marks testified that she "has had absolutely no contact" with Jonathan Terry "throughout the length of this case." But "[t]he Court [found] that DHS has made meaningful and reasonable efforts to provide services to the Mother and the fathers to work towards reunification. The Court finds that all three parents in this case are in total noncompliance and all three have failed miserably." The order also states that DHS "has had no contact with Jonathan Terry" and that he was "reportedly" incarcerated.

Turning back to the hearing on DHS's petition to terminate Terry's parental rights, the record contains some evidence that Terry was personally served the December 2018 termination petition at the Arkansas Department of Correction, 10 Prison Circle, Calico Rock, Arkansas. The circuit court did appoint a lawyer for Terry, who appeared for the

4

first time in the case when he attended the termination hearing. At that time, Terry testified during the hearing that he believes he is A.T.'s father. Terry was asked, "Did you sign the paperwork at the hospital when [A.T.] was born?" He replied, "Yes I did. . . . I believe it was the birth certificate or filing for the birth[.]" Terry also stated that he had never been ordered to pay child support and had never married A.T.'s mother, Christina Tortorello. When the DHS attorney asked, "[H]as any other court ever found you to be the father to [A.T.]?" Terry said, "No."

According to Terry, A.T. had lived with him full time and for her entire life until June 2017 when he was arrested. (A.T. was four years old when Terry was arrested.) He said that he had completed parenting classes and substance–abuse classes while incarcerated to better himself. He also said that DHS never mailed him any copies of any court orders; nor had he received a copy of the petition for dependency-neglect after the children had been brought into DHS custody. After he had been served with the termination petition, he wrote to the court and asked for an attorney. Terry also said that he had remained in contact with DHS, did not know that a no-contact order had issued as to A.T. and J.S., and wrote letters to both children several times. When asked, "Did you know what you were supposed to be doing [in relation to the court orders]?" Terry replied, "I had no idea." He confirmed during his testimony that he had never seen any court order entered in this case.

DHS caseworker Eugenia Marks admitted that she did not try to find out where Terry was incarcerated during the case. And she lacked any record or information showing that DHS had ever sent Terry a copy of any court order or a copy of the case plan. In direct contravention to the court's permanency-planning order that found DHS had provided

5

services to Terry, Marks said that she had no record that any services were ever offered to Terry.

The circuit court terminated Terry's parental rights after finding DHS had sufficiently proved the failure-to-remedy ground and the subsequent-factors ground. *See* Ark. Code Ann. §§ 9-27-341(b)(3)(B)(i)*(a)–(b)*, 9-27-341(b)(3)(B)(vii)*(a)* (Supp. 2017). The court also determined that terminating Terry's rights was in A.T.'s best interest.

Terry appealed.

II. *The Circuit Court Erred in Terminating Terry's Rights Because DHS Failed to Prove that He is a Parent, Which the Law Requires*

Terminating a parent's rights is an extreme remedy and in derogation of the natural rights of the parents. *Earls v. Ark. Dep't of Human Servs.*, 2017 Ark. 171, 518 S.W.3d 81. We review these cases de novo. *Harjo v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 268, 548 S.W.3d 865. To terminate parental rights, the circuit court must find that at least one statutory ground was proved by clear and convincing evidence and that it is in the child's best interest to terminate parental rights. Ark. Code Ann. § 9-27-341(b)(3). A circuit court's findings in these cases are fact intensive, and we will not reverse them unless they are clearly erroneous. *Sharks v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 435, 502 S.W.3d 569. A finding is clearly erroneous when we are left with a definite and firm conviction that a mistake has been made. *Id.*

Here, Terry argues that DHS identified him as the putative father of A.T. both at the beginning of the case and in the case's subsequent pleadings and orders and listed him as a "father" and "parent" in the caption of the petition to terminate his rights to A.T. The problem is that the circuit court never actually determined Terry's parental status relative to

A.T. DNA testing was not done. The court never found that putative-parent rights had attached. The record does not contain A.T.'s birth certificate or an acknowledgement of paternity. There is no proof that A.T.'s mother and Terry were ever married. Therefore, DHS failed to present the clear and convincing evidence that Terry is a parent. *Tovias v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 228, 575 S.W.3d 621.

DHS responds that Terry is procedurally barred from making this failure-of-proof argument for three reasons. First, the doctrine of invited error precludes relief because Terry invited the error when he "specifically conceded his paternity through his testimony." Under the doctrine of invited error, a party may not complain on appeal of a circuit court error if he or she induced the error or acquiesced to it. In *Smith-McLeod v. Arkansas Department of Human Services*, 2019 Ark. App. 25, 571 S.W.3d 491, trial counsel conceded at the hearing that the circuit court could terminate on certain statutory grounds. We have no such concession in this case. Terry's belief that he is A.T.'s father does not relieve DHS of its statutory burden to sufficiently establish at least one statutory ground that it alleged in its petition to terminate. A common-sense element to all the statutory grounds DHS alleged is that they can be applied only to a "parent." Consequently, DHS had the burden to prove by clear and convincing evidence that Terry is a "parent" as that term is defined by Arkansas law. It didn't.

As for the timing of Terry's sufficiency-of-evidence point, it can be raised for the first time on appeal following a bench trial. *Martin v. Ark. Dep't of Human Servs.*, 2017 Ark. 115, at 10 n.3, 515 S.W.3d 599, 606 n.3 ("[I]n a civil bench trial, a party may challenge the sufficiency of the evidence for the first time on appeal.").

7

The second procedural hurdle DHS raises is that allowing Terry to argue that DHS failed to prove he is a parent violates the doctrine of inconsistent positions. Our supreme court has stated four conditions one must establish to benefit from this doctrine:

A party must assume a position clearly inconsistent with a position taken in an earlier case, or with a position taken in the same case;

A party must assume the inconsistent position with the intent to manipulate the judicial process to gain an unfair advantage;

A party must have successfully maintained the position in an earlier proceeding such that the court relied upon the position taken; and

The integrity of the judicial process of at least one court must be impaired or injured by the inconsistent positions taken.

*Dupwe v. Wallace*, 355 Ark. 521, 533–34, 140 S.W.3d 464, 472 (2004).

Caselaw from this court allows Terry to argue that DHS failed to prove he is a parent even if he did not so argue in the circuit court. We just covered that angle. As to the "inconsistency" point, under cases such as *Northcross v. Arkansas Department of Human Services*, 2018 Ark. App. 320, 550 S.W.3d 919, and *Earls v. Arkansas Department of Human Services*, 2017 Ark. 171, 518 S.W.3d 81, a lay person's reference to himself as a father—or even a DNA test showing a 99.9% probability that a man is the biological father of a child—is insufficient to establish "parent" status for purposes of the termination process until and unless there is *an express finding by the circuit court* that the man is, in fact, a parent. In any event, we are not persuaded that the doctrine applies in this case.

The third procedural hurdle DHS raises is that Terry failed to appeal the circuit court's prior orders that "consistently recognized him as either A.T.'s parent or father." Terry's failure to appeal court orders that preceded the termination order, in DHS's view,

means that he acquiesced to the court's treatment of him as a parent and that he failed to bring up a sufficient record demonstrating error. This is essentially the "inconsistency" point packaged in waiver paper. And we still disagree with DHS.

First, the orders that predated the termination petition were made part of the record *by DHS* during the termination hearing and are therefore fair game now. Second, Terry does not ask us to reverse one or more of them. Instead, he asks that we read the various terms used in them. The inconsistencies Terry points out are that he is identified as A.T.'s "putative father" in the petition for emergency custody yet in the captions of the subsequent pleadings and orders, he is identified as the "father" or "parent" of A.T. And most importantly, none of the circuit court's prior orders include a specific finding by the court that Terry is a "parent" as defined in the juvenile code. Ark. Code Ann. § 9–27–303(40) (Supp. 2017).

Having cleared the procedural brush, we reach the merit of Terry's argument and hold that DHS did not prove by clear and convincing evidence that Terry is a parent. That lapse is, of course, a crucial one. *Tovias v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 228, 575 S.W.3d 621 (DHS must prove a man is a parent before circuit court can terminate his rights on statutory grounds). For termination purposes, a "Parent" is "a biological mother, an adoptive parent, or a man to whom the biological mother was married at the time of conception or birth or who has signed an acknowledgment of paternity pursuant to section 9–10–120 or who has been found by a court of competent jurisdiction to be the biological father of the juvenile[.]" Ark. Code Ann. § 9–27–303(40). Terry is not A.T.'s biological mother; he is not an adoptive parent; and he was not married to A.T.'s biological mother

9

when A.T. was conceived or born. No court has previously determined, as far as anyone knows, that he was A.T.'s biological father. Finally, there is no written evidence that Terry signed an acknowledgment of paternity pursuant to section 9-10-120. All we have is Terry's testimony that he "believed" he signed "the birth certificate or filing for the birth." DHS has the burden of proof in this case. It did not produce an acknowledgement or anything else that established Terry's parental status under law. That means the circuit court lacked sufficient evidence on which to conclude that Terry is a parent whose rights could be terminated.

DHS says again in its supplemental brief that Terry's parental status was never questioned throughout the entire case. It argues that the circuit court never required either Terry or DHS to prove Terry's paternity status—or the significant contacts Terry may or may not have had as a putative parent—because Terry was "always treated as a parent" and "received the process due a parent." Therefore, there is no reversible error. This is DHS's invited-error or inconsistent-positions argument 2.0.

The essential point here is that a person's reference to himself as a father is not the clear and convincing proof a circuit court must have when determining whether a man is a parent under Arkansas law. Simply put, DHS failed to carry its burden to prove that Terry is a parent. And the circuit court did not make an express finding that Terry was A.T.'s parent. Therefore, the court could not terminate any purported parental rights as between Terry and A.T.

The termination order is reversed, and the case is remanded for further proceedings.

Reversed and remanded.

MURPHY, J., agrees.

GRUBER, C.J., concurs without written opinion.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Andrew* Firth and *Callie Corbyn*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.